Larry L. HALL and Craig A.
Hammond, Petitioners,

v.

Patricia L. WALTER and Reuben
A. Walter, Respondents.

No. 97SC100.

Supreme Court of Colorado,
En Banc.

Dec. 14, 1998.

---

Mark A. MacDonnell, Las Animas, for Petitioners.

Roberta Earley, Colorado Springs, for Respondents.

E. Hil Margolin, Denver, for Dean T. Ogawa, Chapter 7 Trustee.

Kennedy & Christopher, P.C., John R. Mann, Denver, for Amicus Curiae Colorado Defense Lawyers Association.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Garth Lucero, Deputy Attorney General, Jan Michael Zavislan, First Assistant Attorney General, Diana R. Maurer Schatz, Assistant Attorney General, Civil Litigation Section, Denver, for Amicus Curiae, Colorado Attorney General.

Chief Justice MULLARKEY delivered the opinion of the court.

We granted certiorari to review the court of appeals' judgment in *Walter v. Hall*, 940 P.2d 991 (Colo.App.1996), affirming the trial court's order awarding treble damages to the respondents, Patricia and Rueben Walter (the Walters), pursuant to section 6–1–113, 2 C.R.S. (1992). We address the question of whether the court of appeals properly found that the Walters had standing to bring a claim under the Colorado Consumer Protection Act, sections 6–1–101 to –511, 2 C.R.S. (1998).[1]

The Walters initiated proceedings in the Las Animas County District Court (trial court) against petitioners Larry Hall and Craig Hammond, seeking damages for trespass, misrepresentation, unlawful taking, and deceptive trade practices contrary to the Colorado Consumer Protection Act (CCPA). At the conclusion of the trial, a jury verdict was entered in favor of the Walters in the amount of $72,000 for actual damages on the trespass claim and $28,000 in punitive damages because such conduct was willful and wanton. The trial court further determined that the actual damages as found by the jury were to be trebled because of a jury finding that Hall and Hammond had violated the CCPA.

On appeal, the court of appeals affirmed the judgment, concluding, as relevant here, that the respondents had standing to maintain this action under the CCPA and that the respondents presented sufficient evidence of causation at trial to recover under the CCPA. We now conclude that the respondents have standing under the CCPA, and we affirm the court of appeals' judgment.

I.

Beginning in 1985, Hall and Hammond offered individual lots for sale in a subdivision known as Longhorn Ranch Phase III. Because Phase III of Longhorn Ranch (Longhorn Lots) had not been registered with the Colorado Real Estate Commission (Commission), Hall and Hammond applied in 1991 to the Commission for registration and certification as the subdivision developer. As part of the registration and certification process, they disclosed that at least forty-seven of the Longhorn Lots had been sold prior to the registration. They also stated that purchasers would have legal access to their properties within the Longhorn Lots by two access routes. One of the access routes was a road that ran through a pasture owned by the Walters.

Hall and Hammond widely advertised these lots and offered them for sale to the

---

1. We granted certiorari on the following issue:

 Whether the court of appeals erred in determining that the respondents enjoyed standing to maintain a claim for a violation of the Colorado Consumer Protection Act (CCPA), *see* §§ 6–1–101 to –305, 2 C.R.S. (1992), where the respondents were third-party non-consumers, and *where no causal connection was shown between the CCPA violation and the respondents' damage.*

 (Emphasis added.) The underscored language is contrary to the undisputed facts showing a causal connection between the CCPA violation and the respondents' injury. *See Walter v. Hall*, 940 P.2d 991, 998–99 (Colo.App.1996). Therefore, we find that certiorari was improvidently granted

on the issue as framed by the petitioners. Striking the offending language, we address the question presented by the petitioners as follows:

 Whether the court of appeals erred in determining that the respondents enjoyed standing to maintain a claim for a violation of the Colorado Consumer Protection Act (CCPA), *see* §§ 6–1–101 to –511, 2 C.R.S. (1998), where the respondents were third-party non-consumers.

We refer to the present version of the Colorado Revised Statutes because the relevant provision, section 113(1), has not changed. Both petitioners and respondents effectively briefed and argued the issue that we now consider. *See Lunsford v. Western States Life Ins.*, 908 P.2d 79, 85 n. 14 (Colo.1995).

general public. They told prospective purchasers that the road on the Walters' property (the Walters' road) was a proper means of access, even though no easement or other license existed to permit the use of that road. As a consequence of this misrepresentation, actual and prospective purchasers used the Walters' road to access the Longhorn Lots. At trial, the Walters presented evidence of injury in two forms. First, Hammond testified that at some point after the Walters had installed locks on the gates across their road, he used wire cutters to cut the locks and gain access to the Longhorn Lots. Second, Howard Eggleston testified that he discontinued negotiations with the Walters for the lease of their pastures because the fences and gates surrounding these pastures were being either knocked down or cut open.

On January 30, 1992, the Walters filed a complaint for trespass, misrepresentation, unlawful taking, and deceptive trade practices against Hall and Hammond and their real estate partnership. The complaint requested both monetary and injunctive relief. On or about February 19, 1992, Hall filed a separate action against the Walters seeking an easement across the Walters' pasture. A hearing was held on March 2, 1992, at which time a preliminary injunction was issued preventing further trespass across the Walters'

pasture. The two cases were then consolidated.

A jury trial was held in December 1994. Before submitting the case to the jury, the trial court found as a matter of law that the Walters' road was not a public roadway and that Hall and Hammond had no ownership interest in that road.[2] The trial court also determined as a matter of law that Hall and Hammond committed a trespass upon the property through the admitted breaking of a lock on the property's gates.[3] The jury subsequently returned verdicts in favor of the Walters, finding that Hall and Hammond's actions had caused damages in the amount of $72,000, that Hall and Hammond had engaged in a deceptive trade practice, and that their actions were attended by wanton and willful disregard for the Walters' rights and feelingswarranting punitive damages in the amount of $28,000.[4] Based on the jury's award of $72,000 for trespass and its finding that Hall and Hammond engaged in deceptive trade practices, the trial court trebled that amount pursuant to section 6-1-113(2)(a), 2 C.R.S. (1998). Accordingly, the trial court entered judgment in the total sum of $244,000 plus costs and attorney fees ($78,-329.57) in favor of the Walters.

On appeal, the court of appeals affirmed. The court of appeals found that the Walters had standing to maintain this action

---

2. Jury Instruction No. 1 read, in relevant part:

The court has determined as a matter of law that the road across Plaintiffs['] property is not a public roadway whose use can be expanded for any other ranching purposes and that Defendants have no ownership interest in this road.

3. Jury Instruction No. 1 further read:

The Court has also determined as a matter of law that the Defendants have committed a trespass upon the Plaintiffs' property through the admitted breaking of the lock upon the gate of Plaintiffs' property.

4. The first question of Jury Instruction No. 1 read: "Did the plaintiffs incur damages or losses caused by the actions of the defendants?" The verdict form read:

You are instructed to answer the following questions. You must all agree on your answers to each question for which an answer is required:
We, the jury, present our Answers to Questions submitted by the Court, to which have unanimously agreed:

1. Did the Plaintiff[ ]s incur actual damages or losses caused by the actions of any Defendant as a result of the Trespass? (Answer Yes or No)
ANSWER: Yes

2. If the answer to question Number 1 is yes, what is the total amount of actual damage or loss incurred by the Plaintiffs and caused by the defendant(s). (Enter amount or "none")
ANSWER: $72,000

3. Did the defendants or any one of them engage in a deceptive trade practice? (Answer Yes or No)
ANSWER: Yes

4. Were any of the defendants['] actions attended by circumstances of wanton and willful disregard for the rights and feelings of the Plaintiffs? (Answer Yes or No)
ANSWER: Yes

5. If the answer to question number 4 is yes, what amount of exemplary damages, if any, do you award to the Plaintiffs? (Enter amount awarded, if any, not to exceed the amount of any actual damages awarded, or "none")
ANSWER: $28,000

under the CCPA and that they had presented sufficient evidence of causation at trial to succeed under the Act. *See Walter,* 940 P.2d at 998. The court reasoned that section 6–1–113(1) of the CCPA, providing that "any person" may bring an action under the CCPA, was available to the Walters because they satisfied the two-part test for standing announced in *Wimberly v. Ettenberg,* 194 Colo. 163, 570 P.2d 535 (1977). *See Walter,* 940 P.2d at 998. The court of appeals also relied on decisions from other states interpreting the phrase "any person" in comparable consumer protection statutes to permit private nonconsumer actions. *See id.* Regarding causation, the court found that the evidence showed that Hall and Hammond had misrepresented to their customers that an easement existed across the Walters' property, that they caused damage to the road, and that their actions caused the respondents to lose two prospective pasture leases. *See id.* at 998–99. The court also found it undisputed that Hall and Hammond's misrepresentations caused the Walters' fences to be torn down, locks to be cut, and gates to be left open. *See id.* Subsequently, in denying the petition for rehearing, the court of appeals modified its decision and struck the $28,000 in punitive damages as duplicative of the trebling sanction under the deceptive trade act portion of the CCPA. *See id.* at 1000.[5]

## II.

This case requires our construction of the Colorado Consumer Protection Act, sections 6–1–101 to –511, 2 C.R.S. (1998) (CCPA). Specifically we review the damages provision, section 6–1–113, which provides, in relevant part:

6–1–113. Damages. (1) The provisions of this article shall be available to any person in a civil action for any claim against any person who has engaged in or caused another to engage in any deceptive trade practice listed in section 6–1–105 or 6–1–105.5.

(2) ... [A]ny person who, in a private civil action, is found to have engaged in or caused another to engage in any deceptive trade practice listed in section 6–1–105 or 6–1–105.5 shall be liable in an amount equal to the sum of:

(a) Three times the amount of actual damages sustained or two hundred fifty dollars, whichever is greater; and

(b) In the case of any successful action to enforce said liability, the costs of the action together with reasonable attorney fees as determined by the court.

§ 6–1–113, 2 C.R.S. (1998).[6] We begin by reviewing the principles governing our analysis.

## A.

Several well established principles of statutory construction guide our interpretation of section 6–1–113. We initially rely on the language of the statute, giving words and phrases their plain and ordinary meaning. *See Moody v. Corsentino,* 843 P.2d 1355, 1370 (Colo.1993); *People v. Guenther,* 740 P.2d 971, 975 (Colo.1987). We must give effect to the spirit and intent of the General Assembly in enacting the statute. *See Brock v. Nyland,* 955 P.2d 1037, 1040 (Colo.1998). A statutory interpretation that defeats the legislative intent or leads to an absurd result will not be followed. *See AviComm, Inc. v. Colorado Pub. Utils. Comm'n,* 955 P.2d 1023, 1031 (Colo.1998). Although we must give effect to the statute's plain and ordinary meaning, the intention of the legislature prevails over a literal interpretation of the statute that would lead to an absurd result, *see id.,* or that would conflict with the Colorado or United States Constitutions. *See People v. Washburn,* 197 Colo. 419, 423, 593 P.2d 962, 964 (1979).

---

**5.** Though the issue is not directly before us, we note that the court of appeals properly relied on *Lexton–Ancira Real Estate Fund, 1972 v. Heller,* 826 P.2d 819, 822–23 (Colo.1992), in modifying its decision and finding that the treble damages award under section 6–1–113 precluded an award of punitive damages on the same facts. *See Walter,* 940 P.2d at 999–1000.

**6.** The CCPA defines "person" to mean "an individual, corporation, business trust, estate, trust, partnership, unincorporated association, or two or more thereof having a joint or common interest, or any other legal or commercial entity." § 6–1–102(6), 2 C.R.S. (1998).

In prior cases concerning the CCPA, we have given the Act a liberal construction, relying on the Act's broad purpose and scope. *See, e.g., May Dep't Stores Co. v. State ex rel. Woodard,* 863 P.2d 967, 973–75 (Colo.1993); *People ex rel. Dunbar v. Gym of America, Inc.,* 177 Colo. 97, 111–17, 493 P.2d 660, 667–69 (1972). In *Dunbar,* our seminal decision regarding the CCPA, this court reversed a trial court's ruling that the Act was unconstitutional. *See Dunbar,* 177 Colo. at 104–17, 493 P.2d at 663–70. In upholding the constitutionality of the CCPA, we observed: "The right to regulate in the name of the police power is especially clear when the legislative intent is to regulate commercial activities and practices which, because of their nature, may prove injurious, offensive, or dangerous to the public." *Id.* at 112, 493 P.2d at 667.

Similarly, in *May Department Stores,* we interpreted the civil penalties provision of the CCPA, *see* § 6–1–112, 2 C.R.S. (1998), consistently with the statute's "broad remedial relief and deterrence purposes." *May Dep't Stores Co.,* 863 P.2d at 973. Accordingly, we construed the phrase "each . . . transaction involved" in section 6–1–112(1) to mean each day that an advertisement appears in a media outlet, irrespective of whether there was any actual injury to a consumer. *See id.* at 975–76. We explained that "[a]n expansive approach is taken in interpreting the CCPA by reading and considering the CCPA in its entirety and interpreting the meaning of any one section by considering the overall legislative purpose." *Id.* at 973 n. 10.

The parties offer differing views on the proper interpretation of section 6–1–113 and of its proper application to the facts of this case. Hall and Hammond assert that the Walters do not have standing under the CCPA because they are third party nonconsumers. They argue that "any person" under the CCPA is limited to persons with a consumer relationship and thatsuch a relationship does not exist in this case. They conclude that the court of appeals' decision creates standing for CCPA violations "regardless of the relationship between the disputing parties, the nexus between the violation of the act and the alleged damages and whether or not the violation had anything to do with the cause of Plaintiffs' injuries." Further, they assert that the Walters failed to demonstrate standing under the two-prong constitutional test we defined in *Wimberly v. Ettenberg,* 194 Colo. 163, 570 P.2d 535 (1977).

The Walters would have us construe the statute such that anyone could bring suit under the CCPA "as long as [he or she has] sustained damages as a result of the deceptive trade practices." They argue that the legislature intended to encourage private parties "to pursue cases against . . . business practices which [have] been identified in Colorado as deceptive trade practices." The Walters agree with Hall and Hammond that a plaintiff must meet the *Wimberly* standing test; however, they contend that the court of appeals correctly found standing in this case.

We decline to read the statute as expansively as the Walters would have us do. Yet, based on the analysis below, we agree with the trial court's judgment that the Walters have standing to bring a claim under the CCPA. We now clarify the circumstances under which a nonconsumer has a cause of action under the CCPA.

### B.

Section 6–1–113(1) of the CCPA, entitled "Damages," reads: "The provisions of this article shall be available to *any person* in a civil action for any claim against any person who has engaged in or caused another to engage in any deceptive trade practice listed in section 6–1–105 or 6–1–105.5." *Id.* (emphasis added). Read literally, the term "any person" would permit a claim for relief under section 6–1–113 based exclusively on the defendant's alleged deceptive trade practices regardless of whether the plaintiff suffered any injury. This reading would indeed be consistent with a liberal construction of the statute; however, it would violate our fundamental standing requirements. *See Wimberly,* 194 Colo. at 168, 570 P.2d at 539.

■ The *Wimberly* standing inquiry requires a court to determine "whether the plaintiff has suffered injury in fact to a legally protected interest as contemplated by statutory or constitutional provisions." *Id.* We

have consistently recognized that "whenever possible a statute should be construed as to obviate or reduce any constitutional infirmities." *People v. Washburn,* 197 Colo. 419, 423, 593 P.2d 962, 964 (1979) (citing § 2-4-201(1)(a), C.R.S. (1973), now § 2-4-201(1)(a), 2 C.R.S. (1998)). Standing under the *Wimberly* test is a constitutional requirement. *See Maurer v. Young Life,* 779 P.2d 1317, 1324-25 (Colo.1989). A literal reading of the phrase "any person" would permit a private cause of action regardless of whether the plaintiff had suffered injury in fact. We reject this reading because such a construction raises constitutional infirmities under *Wimberly.*

 We also reject a reading of the phrase that would make "any person" indistinguishable from "any consumer" under the CCPA. If possible, we must give effect to every word of an enactment. *See Zamarripa v. Q & T Food Stores, Inc.,* 929 P.2d 1332, 1341 (Colo.1997); *Charlton v. Kimata,* 815 P.2d 946, 949 (Colo.1991). The word "consumer" and the phrase "any person" are each used intermittently throughout the statute. For example, in section 6-1-112(1), the General Assembly provided that, in an action brought by the attorney general or a district attorney, a violator may be assessed civil penalties for each violation of the CCPA and that "a violation of any provision shall constitute a separate violation with respect to each *consumer* or transaction involved." § 6-1-112(1) (emphasis added). Section 6-1-113(1), by contrast, provides that a private suit for damages "shall be available to *any person*" for a claim against a CCPA violator. §-1-113(1) (emphasis added).[7] Basic principles of statutory construction require us to distinguish these terms. *See* § 2-4-201(1)(b) ("The entire statute is intended to be effective."). We must assume that the General Assembly made intentional distinctions in the language

of these two related provisions and avoid "presum[ing] that the legislative body used the language idly and not with intent that meaning should be given to its language." *Colorado Ground Water Comm'n v. Eagle Peak Farms, Ltd.,* 919 P.2d 212, 218 (Colo. 1996) (internal quotation marks omitted).

We have previously recognized "consumer" to mean "a person who has been exposed to [the defendant's] violations and either purchases merchandise or undertakes other activities in reliance on the advertisement." *See May Dep't Stores Co.,* 863 P.2d at 973-74. Consequently, we have found that a consumer may be someone who "did not actually purchase the items." *See id.* at 974. "Any consumer" under the statute thus means any actual or potential consumer. The plain meaning of "any person" is more expansive than that of "consumer." Under the CCPA, "any person" must, therefore, encompass more than just actual or potential consumers.

 Our understanding that "any person" includes at least some nonconsumers is consistent with the CCPA's punitive and deterrent functions. *See Farmers Group, Inc. v. Williams,* 805 P.2d 419, 422 (Colo. 1991) (noting that our purpose is to give effect to the legislative intent). The definition of "any person" determines plaintiffs to whom the treble damages and attorney fees provisions of the CCPA will be available for a private cause of action. *See* § 6-1-113(2)(a) (treble damages), -113(2)(b) (attorney fees). Our framework for understanding "any person" to denote something less than the phrase's literal meaning but more than the previously established definition of "consumer" recognizes that the CCPA serves more than a merely restitutionary function. A primary purpose of the CCPA is to deter and punish deceptive trade practices. *See May*

---

7. We are cognizant that the statute of limitations refers to the discovery by a "consumer" of the false, misleading, or deceptive practice as *one* of the bases upon which the statute begins to run. *See* § 6-1-115, 2 C.R.S. (1998). However, the statute of limitations delineates two other bases triggering the limitations period, neither of which relates to when a "consumer" discovers the deceptive trade practice. *See id.* (providing that the statute of limitations also begins to run

"within three years after the date on which the false, misleading, or deceptive act or practice occurred *or* the date on which the last in a series of such acts or practices occurred") (emphasis added). Thus, reading the statute of limitations in its entirety further supports our interpretation of section 6-1-113 and our conclusion that the legislature intended to distinguish the term "person" from the term "consumer."

*Dep't Stores Co.*, 863 P.2d at 972 ("[T]he CCPA's civil penalty requirement is intended to punish and deter the wrongdoer."). The availability of treble damages and attorney fees serves the CCPA's punitive and deterrent purposes. *See Duncan v. Norton*, 974 F.Supp. 1328, 1336 (D.Colo.1997) (finding CCPA civil penalties serve both a punitive and remedial purpose); *Lexton–Ancira Real Estate Fund, 1972 v. Heller*, 826 P.2d 819, 822 (Colo.1992). These provisions also are intended to promote private enforcement. *See Lexton–Ancira*, 826 P.2d at 822.

Furthermore, our understanding that the private remedies serve a punitive and deterrent purpose is buttressed by the existence of a narrow exception set forth in subsection 6–1–113(2.5). This subsection explicitly *limits* a prevailing party's recovery to actual damages in the context of manufactured home purchases. *See* § 6–1–113(2.5). This narrow restitutionary *exception* can have meaning only in the context of a generally punitive and deterrent *rule*. Making punitive and deterrent remedies available to at least some nonconsumers while maintaining the *Wimberly* standing requirement is thus consistent with both the Act's language and its purpose.

### C.

Having marked the boundaries, we now turn to the precise meaning of the phrase "any person." There is no written or recorded record of the proceedings leading to the passage of the CCPA, and hence, we cannot rely upon legislative history to interpret the statute's language. *See May Dep't Stores Co.*, 863 P.2d at 973 n. 9 (Colo.1993) (noting that there is no recorded legislative history for the CCPA); David B. Lee, Note, *The Colorado Consumer Protection Act: Panacea or Pandora's Box?*, 70 Denv. U.L.Rev. 141, 148 (1992).

The CCPA was based on the Revised Uniform Deceptive Trade Practices Act (Uniform Act), which was approved by the National Conference of Commissioners on Uniform State Laws and the American Bar Association in 1966. *See Unif. Deceptive Trade Practices Act*, 7A U.L.A. 265, 265 (1966) (historical note). In enacting the CCPA, however, the General Assembly departed significantly from the Uniform Act. *See Unif. Deceptive Trade Practices Act*, 7A U.L.A. at 271 (general statutory notes) (explaining that the Colorado version "contains numerous variations, omissions and additional matter which cannot be clearly indicated by statutory notes"). Moreover, the available remedy in the Uniform Act is limited to injunctive relief; the Uniform Act does not provide for private damages. *See Unif. Deceptive Trade Practices Act* § 3, 7A U.L.A. at 289–90. Under the Uniform Act, "a person likely to be damaged by a deceptive trade practice of another" may be granted an injunction against the deceptive practice. *Id.* Thus, there is no comparable provision in the Uniform Act to which we can turn for guidance.

States that have enacted private damages provisions have done so of their own accord. For example, Oregon, which also based its consumer protection statute on the Uniform Act, enacted a damages provision which is significantly different from that in the CCPA. The Oregon statute, unlike the CCPA, requires that a plaintiff demonstrate that the defendant wilfully violated Oregon's deceptive trade practices statute. *Compare* Or. Rev.Stat. § 6476.638(1) (1998) (requiring "wilfull use or employment" of a deceptive trade practice in order for a plaintiff to recover) *with* § 6–1–113, 2 C.R.S. (1998) (imposing no such requirement). At the same time, other states' consumer protection damages provisions, like the CCPA, do not require the violation to be willful even though the statutes were not adopted directly from the Uniform Act. For example, the Illinois statute provides that "[a]ny person who suffers actual damages as a result of a violation of this Act committed by any other person may bring an action against such person." 815 Ill. Comp. Stat. 505/10a (West 1998).

As we did in *May Department Stores*, we find it helpful here in construing section 6–1–113(1) to examine other states' interpretations of their consumer protection statutes. *See May Dep't Stores Co.*, 863 P.2d at 974–75 (reviewing other courts' interpretations of the civil penalties provisions in various state consumer protection statutes). Several

courts have construed analogous "any person" language in their corresponding state consumer protection statutes to allow nonconsumer plaintiffs to bring suit. For example, in *Vitolo v. Dow Corning Corp.*, 166 Misc.2d 717, 634 N.Y.S.2d 362, 366 (N.Y.Sup. Ct.1995), the court held that a physician who alleged damage to his practice as a result of negative publicity surrounding silicone breast implant litigation had standing to sue because "the statute, by its terms, gives *any person* who has been injured due to a violation thereof the right to bring an action." The *Vitolo* court explained: "The definition of 'person' is much broader than 'consumer,' embracing all possible plaintiffs, including business persons.... There is no requirement of privity, and victims of indirect injuries are permitted to sue under the Act." *Vitolo*, 634 N.Y.S.2d at 366–67.

The Massachusetts Supreme Judicial Court arrived at a similar conclusion in *Maillet v. ATF–Davidson Co., Inc.*, 407 Mass. 185, 552 N.E.2d 95, 98–99 (Mass.1990). In *Maillet*, the court rejected the defendant's argument that Massachusetts's consumer protection statute, which allows "any person" injured by a violation of the statute to bring suit, was limited to consumers in privity with the defendant. *See id.* Accordingly, the court held that the plaintiff, a printing company employee who was injured while operating a printing press, could sue the printing press manufacturer notwithstanding the fact that he was not in privity with the manufacturer and was not the purchaser of the printing press. *See id.; see also Van Dyke v. St. Paul Fire & Marine Ins. Co.*, 388 Mass. 671, 448 N.E.2d 357, 359–60 (Mass.1983).

The Illinois Consumer Fraud and Deceptive Business Practices Act (Illinois Act) provides that "any person who suffers damage" as a result of a violation of the Act may bring an action against the violator. 815 Ill. Comp. Stat. 505/10a (West 1998). In interpreting this provision as it applies to suits involving nonconsumer business entities, Illinois appellate courts have consistently held that such businesses have standing under the Illinois Act so long as there is a "consumer nexus." *See Athey Prods. Corp. v. Harris Bank Roselle*, 89 F.3d 430, 436–37 (7th Cir.1996) (reviewing Illinois cases interpreting the Illinois Act and applying the consumer nexus test).[8]

Likewise, in *Washington State Physicians Insurance Exchange & Ass'n v. Fisons Corp.*, 122 Wash.2d 299, 858 P.2d 1054, 1060–61 (Wash.1993), the Washington Supreme Court found that nonconsumers may have standing under the Washington Consumer Protection Act, which allows "any person" injured in his or her business or property by a violation of the statute to bring a civil action against the violator. The *Fisons* court explained: "Although the consumer protection statutes of some states require that the injured person be the same person who purchased goods or services, there is no language in the Washington Act which requires that a CPA plaintiff be the consumer of goods or services." *Fisons*, 858 P.2d at 1061.

Washington state has long served as a model for the development of consumer protection legislation. *See* William A. Lovett, *Private Actions for Deceptive Trade Practices*, 23 Admin. L.Rev. 271, 275 (1971). Like the CCPA, Washington's consumer protection act (the Washington Act) provides a private right of action that the statute's plain

**8.** Other states whose consumer protection statutes contain identical "any person" language have not addressed the precise question before us. *See, e.g., Church of the Nativity of Our Lord v. WatPro, Inc.*, 491 N.W.2d 1, 9–11 (Minn.1992) (Simonett, J. concurring in part and dissenting in part) (arguing that the statute's "any person" language was meant to protect against deceptive practices "to which the public is prey," to exclude *merchants,* and to permit discretionary attorney fee awards only where the defendant's fraudulent acts have the potential to affect the public generally); *Gross–Haentjens v. Leckenby*, 38 Or.App. 313, 589 P.2d 1209, 1210–11 (Or.App.1979) (holding that Oregon consumer protection act's private cause of action provision for "loss of money or property" does not create a cause of action for *personal injuries* ). Even if we found these cases to be persuasive, our holding today does not conflict with these decisions. *See* discussion of public interest element *infra* at 234–235; *see also Martinez v. Lewis*, 969 P.2d 213, 222–23 (Colo.1998) (declining to reach the question of whether remedies under section 6–1–113 are available for personal injury, the issue decided by the Oregon court of appeals in *Gross–Haentjens* for the analogous section of Oregon's consumer protection act).

language makes available to "any person" injured by a violation of the act. This same section contains a treble damages provision analogous to that in the CCPA. *See* Wash. Rev.Code Ann. § 19.86.090 (1997). In *Hangman Ridge Training Stables, Inc. v. Safeco Title Insurance Co.,* 105 Wash.2d 778, 719 P.2d 531 (Wash.1986), the Washington Supreme Court clarified the application of this section by delineating the five elements required to establish a private cause of action under the Washington Act: (1) an unfair or deceptive act or practice; (2) in trade or commerce; (3) which affects the public interest; (4) injury to the plaintiff's business or property; and (5) a causal link "between the unfair or deceptive act complained of and the injury suffered." *See Hangman Ridge,* 719 P.2d at 535. Courts have subsequently found nonconsumer standing under the Washington Act in a variety of contexts. *See Fisons,* 858 P.2d at 1061 (finding physician had cause of action against drug manufacturer for harm caused when physician prescribed drug based on manufacturer's representations); *Schmidt v. Cornerstone Invs., Inc.,* 115 Wash.2d 148, 795 P.2d 1143, 1151 (Wash.1990) (affirming attorney fee award for investors in real estate transaction recovered against property seller for injury caused by misleading and deceptive appraisal information); *see also Northwest Airlines, Inc. v. Ticket Exch., Inc.,* 793 F.Supp. 976, 980 (W.D.Wash.1992) (finding airline had claim for injunctive relief against frequent flyer ticket broker for misrepresentations made by the broker to ticket purchasers).

Based on the CCPA's language and our prior decisions, we are persuaded that an analogous five-element standard applies in Colorado. First, the CCPA requires the plaintiff to establish conduct by the defendant that constitutes a deceptive trade practice. *See* § 6–1–105, 2 C.R.S. (1998) (identifying and defining deceptive trade practices). Second, a deceptive practice must, by definition, occur "in the course of such person's business, vocation, or occupation." § 6–1–105(1). So, analogous to Washington's "trade or commerce" requirement, the deceptive act must be related to the conduct of the defendant's business.

Third, regarding public interest, our prior cases have recognized that the CCPA "is clearly enacted to control various deceptive trade practices *in dealing with the public.*" *People ex rel. Dunbar v. Gym of America, Inc.,* 177 Colo. 97, 107, 493 P.2d 660, 665 (1972) (emphasis added). The CCPA regulates practices which "because of their nature, may prove injurious, offensive, or dangerous to the public." *Id.; see also People ex rel. MacFarlane v. Alpert Corp.,* 660 P.2d 1295, 1297 (Colo.App.1982) (noting the substantial public protection emphasis of the CCPA).

While the public interest component is longstanding, we now recognize that a more precise reading of the statute's function requires an impact on the public as consumers of the defendant's "goods, services, or property." § 6–1–105(a). This understanding is consistent with the statute's title. *See People v. Zapotocky,* 869 P.2d 1234, 1239 (Colo. 1994) (considering legislation's title in determining legislative intent). It also comports with our consistent characterization of the CCPA as addressing consumer concerns. *See Western Food Plan, Inc. v. District Court,* 198 Colo. 251, 256, 598 P.2d 1038, 1041 (1979) (noting legislative purpose to prevent or remedy consumer fraud); *Dunbar,* 177 Colo. at 113, 493 P.2d at 668 (finding that state may enjoin deceptive practices "that have a tendency or capacity to attract customers" as a valid exercise of police power). Therefore, the challenged practice must significantly impact the public as actual or potential consumers of the defendant's goods, services, or property. As with the second requirement, we look to the Washington test as a model, but we adhere to the CCPA's language.

Fourth, as discussed earlier in this opinion, the standing analysis we defined in *Wimberly v. Ettenberg,* 194 Colo. 163, 570 P.2d 535 (1977), requires a plaintiff to have suffered injury in fact to a legally protected interest. *See id.* at 168, 570 P.2d at 539. This requirement is also implicit in our analysis in *May Department Stores* of the CCPA's civil penal-

ties provision.[9] In *May Department Stores,* we held that civil penalties did not require a showing of actual injury but we noted that "[t]he 'consumer ... involved' almost necessarily involves an actual injury." *May Dep't Stores Co.,* 863 P.2d at 974 (quoting § 6–1–112(1)). We now make explicit that for a private cause of action under the CCPA, the plaintiff must meet the *Wimberly* standing requirements by demonstrating (a) injury in fact; (b) to a legally protected interest.

Fifth, the plaintiff must be able to show that the defendant's actions in violation of the CCPA caused the plaintiff's injury. This requirement was contemplated as a general rule in *Wimberly* where we noted that although causation is not part of a threshold standing analysis, it is necessary to establish liability in a private cause of action: "[J]udgment on the merits imports a determination pursuant to due process that the injury in fact to plaintiff's legally protected right resulted from the alleged action of the defendant." *Wimberly,* 194 Colo. at 168, 570 P.2d at 539; *see also May Dep't Stores Co.,* 863 P.2d at 975–76.[10]

■ Because we find the five elements discussed above to be inherent in the CCPA and our relevant prior case law, we now hold that for purposes of a private cause of action pursuant to section 6–1–113, 2 C.R.S. (1998), "any person" means a person, as defined by section 6–1–102(6), 2 C.R.S. (1998), who establishes (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury.

III.

■ Applying our construction of section 6–1–113(1) to the facts of this case, we agree with the court of appeals that the Walters may bring a private claim under the CCPA. First, Hall and Hammond told purchasers and prospective purchasers that there was legal access to the Longhorn Lots by way of the Walters' road. The jury explicitly found that these misrepresentations constituted a deceptive trade practice. Question 3 on the Verdict Form read "Did the defendants or any one of them engage in a deceptive trade practice?" The jury's response was "Yes."

■ Second, there is no question that Hall and Hammond's deceptive practices occurred in the course of their business. The CCPA defines real property transactions to be part of regulated trade or business. *See* § 6–1–102(8), (10) (including "real property" in definition of "property"); *see also People ex rel. MacFarlane v. Alpert Corp.,* 660 P.2d 1295, 1297 (Colo.App.1982) (finding legislative intent to include advertisement or sale of real property in CCPA coverage). Third, there is no dispute that Hall and Hammond's deceptive practices implicated the public as consumers because the misrepresentations were directed to the market generally, taking the form of widespread advertisement and deception of actual and prospective purchasers. Unlike the circumstances of the companion case, *Martinez v. Lewis,* 969 P.2d 213 (Colo.1998), the defendants' actions in this case did not constitute a "purely private wrong." *Martinez v. Lewis,* 942 P.2d 1219, 1226 (Colo.App.1996) (citing *United States Welding, Inc. v. Burroughs, Corp.,* 615 F.Supp. 554, 555 (D.Colo.1985) (suggesting that the CCPA was not intended to provide commercial protection for acts "which are merely private in nature")). We conclude that the Walters have met the first three elements of the test for a private claim under the CCPA.

9. The attorney general or a district attorney may seek civil penalties for "each consumer or transaction involved." § 6–1–112(1), 2 C.R.S. (1998). As noted earlier, the civil penalties provision, in contrast to the private remedies provision, is explicitly limited to violations affecting consumers.

10. The fourth and fifth requirements for a private remedy under the CCPA do not affect our prior decisions ruling that civil penalties under the CCPA do not require a showing of injury or causation and are a valid exercise of the police power. *See, e.g., May Dep't Stores Co.,* 863 P.2d at 972.

Prior to addressing the fourth and fifth elements, we emphasize that, to this point, it is the defendants' alleged actions that have been subject to scrutiny. Our focus on Hall and Hammond's alleged conduct comports with the General Assembly's purpose in enacting the CCPA of preventing deceptive trade practices that *"may prove injurious, offensive, or dangerous to the public." People ex rel. Dunbar*, 177 Colo. at 111, 493 P.2d at 667 (emphasis added). The first three elements address this purpose. By contrast, the fourth and fifth elements address whether the impact of these actions is such that the particular plaintiff in question has a cause of action under the statute. It is these final two elements, required under section 6–1–113, that distinguish a private CCPA action from a district attorney or an attorney general's action for civil penalties under section 6–1–112. As discussed *supra* at 235, the latter requires no showing of either actual injury or causation.

■ In the present case the Walters demonstrated injury to their property from having their locks cut, their fences either cut or knocked down, and lease opportunities lost. It is undisputed that the Walters suffered injury. Hall and Hammond argue, however, that the injury was not to a "legally protected interest" under the *Wimberly* analysis. *See Wimberly v. Ettenberg*, 194 Colo. 163, 168, 570 P.2d 535, 539 (1977). They argue that the Walters have a legally protected interest "in keeping persons from trespassing on their property," but that "injuries suffered as a result of such trespass are clearly not contemplated by the Consumer Protection Act." Further, they assert that "[t]he nexus between the complained deceptive trade practice and the sustained injury is so attenuated as to be almost non-existent." We disagree.

■ First, Hall and Hammond's argument fails to distinguish the question of standing from that of causation. Standing is a threshold question of law; causation is a question of fact which in this case the judge properly submitted to the jury. *See Wim-*

*berly*, 194 Colo. at 168, 570 P.2d at 539 (noting that a "typical lawsuit" raises three questions, the first two of which constitute the two-prong standing analysis and the third of which, causation, "is properly reserved for the trier of fact"). Second, their argument asserts in a conclusory and, we find, erroneous fashion that the Walters did not have a legally protected interest under the CCPA.

The CCPA does not specify injuries against which it is intended to guard. Its focus lies with defining prohibited actions that are likely to injure the public and specifying civil penalties and private remedies available for these violations. In terms of verbiage alone, two thirds of the statute's general provisions, Part 1 of the statute, is devoted to identifying prohibited deceptive trade practices.[11] *See* §§ 6–1–105, –105.5, 2 C.R.S. (1998). The remainder of Part 1 consists of general definitions, *see* § 6–1–102, specified exclusions, *see* § 6–1–106, and provisions related to public and private enforcement. *See* §§ 6–1–103, –104, –107, –108, & –109 to –115. The CCPA is silent as to specific injuries for which it intends to provide a remedy. If we were to decide that the only consumer protection interests "legally protected" are ones defined in the Act, we would render the CCPA's damages provision inoperable. This result would be contrary to our jurisprudence. *See, e.g., AviComm, Inc. v. Colorado Pub. Utils. Comm'n*, 955 P.2d 1023, 1031 (Colo.1998) (noting that an interpretation of the statute that leads to an absurd result will not be followed). Rather, we will give effect to the spirit and intent of the General Assembly in enacting the statute. *See Brock v. Nyland*, 955 P.2d 1037, 1040 (Colo.1998).

■ The Walters demonstrated injury to their property, both in the form of physical damage and business (lease) value. We find that injury to property, particularly property with business value, lies squarely within the interests that the CCPA is intended to protect. *See Lexton–Ancira Real Estate Fund, 1972 v. Heller*, 826 P.2d 819, 823 (Colo.1992).

---

**11.** We omit from our discussion Parts 2–4 of the CCPA because they address specific business environments (e.g., auto rental, telemarketing) not relevant here; however, the structure of these parts is consistent with our characterization of Part 1.

In *Lexton–Ancira* the claimant, Hixson, was a trade show operator. Because of the defendant's misrepresentations, Hixson's business lost its customers and, ultimately, its value. The misrepresentations included informing potential customers that Hixson's business was no longer available and that the defendant's business was a continuation of Hixson's. While we found that a plaintiff may not receive a double recovery on the same facts, Hixson was properly awarded treble damages under section 6–1–113 for her injury. *See Lexton–Ancira,* 826 P.2d at 823. Like the claimant in *Lexton–Ancira,* the Walters suffered injury to the business value of their property.

Furthermore, in looking again to other states' consumer protection laws, we find that other jurisdictions consistently find injuries to property to be actionable. *See, e.g.,* Or.Rev.Stat. § 646.638 (1997) ("[A]ny person who suffers any ascertainable loss of *money or property, real or personal* . . . may bring an individual action . . . .") (emphasis added); Wash. Rev.Code Ann. § 19.86.090 (1997) ("Any person who is injured in his or her business or property" may bring a consumer protection action); *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.,* 190 Ill.App.3d 524, 137 Ill.Dec. 409, 546 N.E.2d 33, 40–41 (Ill.App.1989) (finding allegation of damage to business sufficient to sustain a cause of action); *Church of the Nativity of Our Lord v. WatPro, Inc.,* 491 N.W.2d 1, 8, 10 (Minn.1992) (finding unanimously that water damage to plaintiff's church was caused by the defendant's misrepresentation regarding maintenance service and was actionable under Minnesota's consumer protection act); *Mason v. Mortgage America, Inc.,* 114 Wash.2d 842, 792 P.2d 142, 148 (Wash.1990) ("A loss of property which is causally related to an unfair or deceptive act or practice is sufficient injury to constitute the [injury in fact] element of a Consumer Protection Act violation."); *see also Moore v. Goodyear Tire & Rubber Co.,* 364 So.2d 630, 633 (La.1978) (permitting private action under Louisiana's consumer protection act for "any ascertainable loss of money" resulting from consumer protection violation, *including action arising in trespass* ); *Stanley v. Moore,* 339 N.C. 717, 454 S.E.2d 225, 228–29 (N.C.1995) (finding injury from unlawful eviction, *arising in trespass,* actionable under North Carolina's consumer protection act).

For the reasons discussed above, we hold that property is a legally protected interest under the CCPA and that a plaintiff may recover under section 6–1–113 for injury to property and property value provided that the plaintiff satisfies each element of the standard for a private CCPA cause of action announced in this opinion. That a plaintiff may have other statutory or common law causes of action based on the same set of facts does not affect the plaintiff's right to assert a claim under the CCPA. *See Lexton–Ancira,* 826 P.2d at 825 (noting that plaintiff may bring both CCPA and "other causes of action" based on the same facts).

Finally, we address the fifth element: causation. To recover under the CCPA, the Walters are required to prove that Hall and Hammond's misrepresentations caused the injury to their property. In affirming the trial court's decision, the court of appeals found it "undisputed that the actions and representations of defendants caused fences to be torn down, locks to be cut, and gates to be left open." *Walter v. Hall,* 940 P.2d 991, 999 (Colo.App.1996). Thus, the court of appeals affirmed the trial court's verdict for the Walters. *See id.*

We agree with the court of appeals that the evidence presented at trial was sufficient to establish causation between Hall and Hammond's CCPA violations and the subsequent injury to the Walters' property. The existence of a causal link between a defendant's conduct and a plaintiff's injury is a question of fact. *See Kaiser Found. Health Plan v. Sharp,* 741 P.2d 714, 719 (Colo.1987). The trial court instructed the jury on the Walters' need to establish causation. The first question presented in Jury Instruction No. 1 read: "Did the plaintiffs incur damages or losses caused by the actions of the defendants?" Jury Instruction No. 13 instructed the jury on causation: "The word 'caused' as used in these instructions means an act or failure to act which in natural and probable sequence produced the claimed injury or loss.

It is a cause without which the claimed injury or loss would not have been incurred." [12] We presume a jury follows the trial court's instructions in rendering a verdict. *See Lee's Mobile Wash v. Campbell,* 853 P.2d 1140, 1144 (Colo.1993). The jury was instructed on causation, and there is ample evidence in the record to support the jury's finding a causal link between Hall and Hammond's deceptive trade practices and the injury to the Walters' property. *See id.* Therefore, the trial court's award of treble damages pursuant to section 6–1–113(2)(a) was proper.

## IV.

Because we conclude that the Walters established the five elements necessary to sustain a private cause of action under section 6–1–113 of the Colorado Consumer Protection Act, we affirm the judgment of the court of appeals.

Justice SCOTT dissents.

Justice KOURLIS dissents.

Justice SCOTT, dissenting:

I respectfully dissent. While I agree with the test adopted by the majority for determining whether a plaintiff has standing under the Colorado Consumer Protection Act (CCPA), I disagree with the majority's conclusion that the Walters satisfy the test. Specifically, I would conclude that the Walters do not meet the third and fifth prongs of the test.

## I.

The majority, relying upon *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wash.2d 778, 719 P.2d 531 (Wash.1986), adopts a five-prong test to determine whether the Walters have standing under the CCPA. I conclude that the Walters' trespass claim against Hall and Hammond does not satisfy the third prong of that test, that is, that the trespass did not "significantly impact the public as actual or potential consumers of the defendant's goods, services,

or property." Maj. op. at 235–236. In *Hangman Ridge,* the Washington State Supreme Court defined the third prong as "a public interest showing." 719 P.2d at 535. The court then went on to explain, with respect to the public interest showing, that "[w]here the transaction was essentially a private dispute, it may be more difficult to show that the public has an interest in the subject matter.... [I]t is the likelihood that additional plaintiffs have been or will be injured *in exactly the same fashion that changes a factual pattern from a private dispute to one that affects the public interest." Id.* at 538 (citations omitted) (emphasis added). The court then lists several factors which would indicate a public interest in this context:

> Were the alleged acts committed in the course of defendant's business? (2) Did defendant advertise to the public in general? (3) Did defendant actively solicit this particular plaintiff, indicating potential solicitation of others? (4) Did plaintiff and defendant occupy unequal bargaining positions? As with the factors applied to essentially consumer transactions, not one of these factors is dispositive, nor is it necessary that all be present. The factors in both the "consumer" and "private dispute" contexts represent indicia of an effect on public interest from which a trier of fact could reasonably find public interest impact.

719 P.2d at 538.

Taking guidance from this additional explanation in *Hangman Ridge,* I would conclude that the public interest is not implicated in this instance. The injury to the Walters, trespass, is qualitatively different than the injury allegedly suffered by the public as a result of Hall and Hammond's misrepresentations. There is virtually no likelihood that additional plaintiffs would be injured in "exactly the same fashion" the Walters were, as they were the only homeowners who could suffer trespass on that land. *Id.* Thus, the wrong is private, not public, and the Walters, who were properly awarded $72,000 as a consequence of the

---

**12.** This instruction tracks the civil jury instruction on causation with minor, inconsequential

modification. *See* C.J.I.-Civ.3d 9:26.

trespass and an additional $28,000 because the defendants' actions were willful and wanton, do not have standing to treble the actual damages for the identical injury under the CCPA. *See Martinez v. Lewis,* 969 P.2d 213, 222–223, 1998 WL 858153 (Colo. Dec. 14, 1998) (holding that a doctor's misrepresentations to an insurer did not give standing to the insured under the CCPA, because the wrong was private, and did not impact the public).

## II.

I would also conclude that the Walters do not satisfy the fifth prong, namely that "the plaintiff must be able to show that the defendant's actions in violation of the CCPA caused the plaintiff's injury." Maj. op. at 235.

Here, the defendants' actions for which damages were calculated and awarded constituted trespass. Nowhere in the CCPA, however, is trespass listed as a deceptive trade practice. Moreover, the jury verdict form did not contemplate damages attributable to any CCPA violations. Hence, on this record, the only claim on which the jury awarded damages was the trespass claim. In addition, even if we view the misrepresentations to potential purchasers as having been proven as a violation of the CCPA, I fail to see on this record how Hall and Hammond's misrepresentations to potential purchasers directly caused the Walters' injury. The basis for the Walters' damages was the loss of pasture leases, which was caused by Hall and Hammond's acts of cutting locks and knocking down fences. These damages for trespass, for which the jury awarded $72,000 in actual damages and $28,000 in punitive damages, had no relation to the misrepresentations, and therefore, there can be no causal link between the two.

## III.

Accordingly, I would vacate the treble damages awarded for trespass and award the Walters $72,000 in actual damages and $28,000 in punitive damages resulting from the trespass.

Justice KOURLIS dissenting:

Because I view the remedies of the Colorado Consumer Protection Act ("CCPA" or "Act") to be intended for consumers, I would reach a result different from that reached by the Majority. The Majority delineates five requirements that a plaintiff must meet in order to have standing to bring a private cause of action under the CCPA. *See* maj. op. at 235. In my view, the Majority's test extends the limits of standing in a manner inconsistent with the purpose, text, and policy of the Act. Because I would hold that standing under the CCPA is limited to consumers, I respectfully dissent.

## I.

Patricia and Reuben Walter sued Larry Hall, Craig Hammond and their real estate partnership for trespass, misrepresentation, unlawful taking, and deceptive trade practices. The trial court determined as a matter of law that Hall and Hammond had no ownership interest in the property and that they had committed trespass. The jury ultimately awarded the Walters $72,000 in damages for the trespass, and $28,000 in punitive damages.[1] The practical import of the issue now before the court concerns whether those damages should be trebled because of a deceptive trade practice.

Certainly, the Walters were injured, but the law provided a remedy for that injury in the form of damages for trespass and willful and wanton conduct. In my view, it was not the intent of the General Assembly in enacting the CCPA to permit plaintiffs such as these to reap the benefit of trebled damages

---

1. The court of appeals struck the $28,000 in punitive damages as duplicative of the trebling sanction under the CCPA. In doing so, the court of appeals relied upon our decision in *Lexton–Ancira Real Estate Fund, 1972 v. Heller,* 826 P.2d 819, 823 (Colo.1992), holding that a plaintiff is not entitled to double recovery for punitive dam-

ages under a common law claim and treble damages under the CCPA. Because in *Heller* we did not address the issue of standing under the CCPA, that case is relevant here only with regard to its holding pertaining to the impropriety of awarding duplicative damages.

when they were not the target of the deceptive practice. The Majority's decision today allows a plaintiff who suffers a trespass because of a defendant's public misrepresentation regarding access to the plaintiff's property to recover three times the amount a plaintiff with the same injury would recover if the misrepresentation were private in nature. I view that result as a misapplication of the CCPA.

## II.

The CCPA is a comprehensive piece of legislation designed, in my view, to protect the consuming public from the deceptive-trade practices of sellers. Accordingly, section 6–1–113(1) of the CCPA provides a private right of action "to any person in a civil action for any claim against any person who has engaged in or caused another to engage in any deceptive trade practice." *See* § 6–1–113(1), 2 C.R.S. (1998). The Walters claim that literally any person can bring suit under this section to redress a violation of the Act. The Majority rejects this broad interpretation, and holds that in order to have standing for a private right of action under the CCPA, a plaintiff must establish:

> (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury.

Maj. op. at 235. Although I agree with the Majority that a private right of action is not available to "any person," I would read the statute more narrowly to limit the cause of action to persons or entities who are "consumers."[2]

**2.** "Consumer" is not defined in the CCPA. In my view, the term includes actual or potential consumers who have been exposed to the violative conduct and who detrimentally relied on that conduct in some way. *See May Dep't Stores Co. v. State ex rel. Woodard,* 863 P.2d 967, 973–74 (Colo.1993).

## III.

The text of section 6–1–113 does not on its face require that a plaintiff prove injury in order to bring a claim alleging deceptive trade practices. *See* § 6–1–113, 2 C.R.S. (1998). As a result, if we were to interpret literally its language providing that "any person" can bring a private action, the statute would violate constitutional standing principles because a plaintiff could sue for damages without having suffered an injury.[3]

Presuming, then, that the language "any person" cannot be read to mean that anyone is able to sue under the CCPA, the task remains of determining what restrictions define the class of plaintiffs who are entitled to bring an action. The title and purpose of the CCPA, the language of its collective provisions, and case law from jurisdictions with similarly worded statutes lead me to conclude that a private right of action should be limited to consumers.

## A.

As the majority notes, there is no legislative history upon which to base our interpretation of the CCPA. *See* maj. op. at 232. We must, therefore, turn to other sources for guidance in statutory interpretation. One such source is the title of the legislation. *See People v. Zapotocky,* 869 P.2d 1234, 1239 (Colo.1994) (noting that a court "may consider the title of the legislation in resolving uncertainties concerning legislative intent"). A natural inference to draw from the title of the Colorado Consumer Protection Act is that its aim is to provide remedies for consumers.

The manner in which we have previously construed the purposes of the CCPA supports this conclusion. In *Western Food Plan, Inc. v. District Court,* for example, we

**3.** *See Wimberly v. Ettenberg,* 194 Colo. 163, 168, 570 P.2d 535, 539 (1977) (holding that standing requires: (1) that plaintiff was injured in fact; and (2) that the injury was to a legally protected right). The Majority concedes that we cannot interpret the statute literally, and includes the *Wimberly* standing requirements as elements of its standing test. *See* maj. op. at 235.

characterized the purpose of the CCPA as "provid[ing] prompt, economical, and readily available remedies against *consumer* fraud." *Western Food Plan, Inc. v. District Court,* 198 Colo. 251, 256, 598 P.2d 1038, 1041 (1979) (emphasis added); *see also People ex rel. Dunbar v. Gym of America, Inc.,* 177 Colo. 97, 113, 493 P.2d 660, 668 (1972) (concluding that the CCPA is a proper vehicle through which to exercise the state's police power "to prevent the use of methods that have a tendency or capacity to attract customers through deceptive trade practices"). As a federal trial court noted, "[t]he Colorado courts ... have implied that it is consumers, rather than private businesses, who are the intended beneficiaries of the Act." *United States Welding, Inc. v. Burroughs, Corp.,* 615 F.Supp. 554, 555 (D.Colo.1985).

Hence, the objectives of the CCPA, as well as its title, indicate that the remedies available under the Act's private action provision are limited to consumers. Language elsewhere in the statute buttresses this conclusion.

### B.

In interpreting the private action provision of section 6–1–113, the Majority suggests that because the word "consumer" appears in other sections of the statute and does not appear in section 6–1–113, the General Assembly did not intend to limit private remedies to consumers. *See* maj. op. at 231–232. It is my view, however, that the intermittent use of the word "consumer" throughout the statute in fact supports the notion that all of the CCPA's remedies are aimed at consumers. The fact that "consumer" does not appear in section 6–1–113 is not inconsistent with this notion.

4. The civil penalties provision is found in section 6–1–112, which states in part:
 (1) Any person who violates or causes another to violate any provision of this article shall forfeit and pay to the general fund of this state a civil penalty of not more than two thousand dollars for each such violation. For purposes of this subsection (1), *a violation of any provision shall constitute a separate violation with respect to each consumer or transaction involved* ....

§ *6–1–112, 2 C.R.S. (1998) (emphasis added).*

· 5. Section 6–1–115 provides:

For example, the word "consumer" appears in the civil penalties provision of the CCPA.[4] Section 6–1–112 "contemplates two different types of violations" for which a cause of action is available: "one in which a consumer is involved and one in which a transaction is involved." *May Dep't Stores Co.,* 863 P.2d at 973. This section empowers the attorney general and district attorneys to enforce the CCPA, not only in circumstances involving actual injury to a specific consumer, but also in circumstances involving a transaction that does not cause injury to a consumer. *See id.* at 974. The distinction in language between "consumer" and "transaction" exists to empower enforcement of civil penalties even in the absence of a specific injury to an identifiable individual. It is a public enforcement remedy and does not necessarily intimate, as the Majority suggests, that section 6–1–113 must afford a private remedy to people other than consumers because its language refers to "any person" rather than "any consumer."

Another indication that the Act is limited to consumers is in the text of section 6–1–115, which defines the statute of limitations for actions brought under the CCPA.[5] The language of that provision hinges the limitation of the action upon the date on which "the consumer" discovered the occurrence of the deceptive act.

### C.

In addition to the evidence within the text of the CCPA and in its interpretation by the Colorado courts, courts in other states with similar legislation have concluded that private actions under consumer protection acts should be limited to consumers.[6] Oregon, for

All actions brought under this article must be commenced within three years after the date on which the false, misleading, or deceptive act or practice occurred or the date on which the last in a series of such acts or practices occurred or within three years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice.

§ 6–1–115, 2 C.R.S. (1998).

6. This is not to say that every state with such language has limited remedies to consumers. As

example, is a state where consumer protection jurisprudence has remained focused on the purpose of providing relief to the consumer despite statutory language that, read in isolation, might suggest standing is available for anyone wishing to sue.

Like the CCPA, the consumer protection act of Oregon is derived from the Uniform Deceptive Trade Practices Act ("UDT-PA").*See Unif. Deceptive Trade Practices Act,* 7A U.L.A. 265 (1966). The private remedy provision of the Oregon statute is similar to that of the CCPA, providing a cause of action for "any person" who suffers a loss as a result of a deceptive trade practice. *See* Or.Rev.Stat. § 646.638 (1997). This "any person" language notwithstanding, the Oregon courts have said that the purpose of the provision is "to provide for 'restitution,' i.e., restitution for economic loss suffered by a *consumer* as the result of a deceptive trade practice." *Gross–Haentjens v. Leckenby,* 38 Or.App. 313, 589 P.2d 1209, 1210 (Or.Ct.App. 1979) (emphasis added); *see also Raudebaugh v. Action Pest Control, Inc.,* 59 Or. App. 166, 650 P.2d 1006, 1009 (Or.Ct.App. 1982) (stating that "[t]he general policy of the [Oregon Unlawful Trade Practices Act] is to discourage deceptive trade practices and to provide a viable remedy for *consumers* who are damaged by such conduct") (emphasis added).

Minnesota's consumer protection statute also provides that "any person" injured by a violation of that act may bring a civil action for damages. *See* Minn.Stat. § 8.31(3a) (1997). The Minnesota Supreme Court has interpreted this language to mean not that literally any person can sue, but that "[t]he Minnesota Consumer Fraud Act ... applies to transactions involving all consumers...." *Church of the Nativity of Our Lord v. Wat-Pro, Inc.,* 491 N.W.2d 1, 8 (Minn.1992). As Justice Simonett explained, the Minnesota Consumer Fraud Act "was meant to protect consumers being hoodwinked by sales promotion scams." *Id.* at 10 (Simonett, J., concurring in part and dissenting in part). Justice Simonett further noted that:

> Read literally, "any person" means just that. But read in context, having in mind the purpose of the statute, "any person" means any consumer....
>
> . . . .
>
> [T]he legislative intent is directed at deceptive practices to which the consumer public is prey, and ... the legislature did not intend thereby to cover ad hoc deceptions arising in private disputes.

*Id.* at 9–10. Like the Minnesota statute, the CCPA is aimed at remedying consumer fraud. *See Western Food Plan,* 198 Colo. at 256, 598 P.2d at 1041. Therefore, actions under its provisions should be limited to consumers.

## IV.

The Majority's test requires that the challenged practice significantly impact the public as actual or potential consumers of the defendant's goods, services, or property.[7] This requirement is overbroad in that it allows any injured person to bring suit if he can show impact on the public, regardless of

---

the Majority notes, courts in some states have construed "any person" broadly. *See* maj. op. at 233. Some courts clearly reject the notion that "any person" is limited to consumers. *See, e.g., Vitolo v. Dow Corning Corp.,* 166 Misc.2d 717, 634 N.Y.S.2d 362, 366 (N.Y.Sup.Ct.1995)(stating that "[t]he definition of 'person' is much broader than 'consumer'"). Others interpret the language in a manner not inconsistent with the notion that consumer protection statutes are limited to providing remedies for consumers. *See, e.g., Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp.,* 122 Wash.2d 299, 858 P.2d 1054, 1060–61 (Wash.1993) (holding that a doctor whose reputation was injured had standing to bring a consumer protection claim against a drug company that failed to warn him about the dangers of a drug he prescribed, but noting that

the unique relationship between a drug manufacturer, a prescribing physician, and a patient "result[ed] in the physician being comparable to the ordinary consumer in other settings"). Although these interpretations are relevant to analysis of the CCPA, I find the narrow construction adopted by courts in Oregon and Minnesota to be more persuasive.

7. *See* maj. op. at 235. The other prongs of the test add nothing new to the standing analysis. Requirements one and two are explicitly required for recovery under the statute. *See* § 6–1–113, 2 C.R.S. (1998); § 6–1–105(1), 2 C.R.S. (1998). The fourth and fifth elements are constitutional requirements of standing as identified in *Wimberly.*

whether that person himself was a member of the public to whom the practice was directed.

Application of the Majority's test to the present case illustrates the problem of the test's overbroad scope. The Majority allows the Walters to recover, despite the fact that the misrepresentations that constituted the deceptive trade practices prohibited by the statute were not aimed at them nor relied upon by them. The Walters were simply not a part of the market to whom Hall and Hammond were advertising. In essence, the Majority's approach allows the Walters to recover for an injury suffered by the public: namely, exposure to the deceptive trade practice.

A more precise means of implementing the goal of protecting consumers, and one more consistent with the title, purpose, and collective language of the statute, is to limit the actions initiated by private persons under the CCPA to those brought by actual or potential consumers. I do not read the CCPA as applicable to non-consumers, and therefore, I respectfully dissent.