In re Mary Joann JENSEN, f/d/b/a Credit Corrections, LLC, a/k/a Joey Jensen, Debtor.

State of Colorado ex rel. Ken Salazar, Attorney General for the State of Colorado, and Laura E. Udis, Administrator, Uniform Consumer Credit Code, Plaintiffs,

v.

Mary Joann Jensen, f/d/b/a Credit Corrections, LLC, a/k/a Joey Jensen, Defendant.

Bankruptcy No. 05–28263 EEB.
Adversary No. 05–1940 EEB.

United States Bankruptcy Court, D. Colorado.

Sept. 30, 2008.

Don D. Jacobson, James A. Kaplan, Denver, CO, for Plaintiffs.

Stephen E. Berken, Denver, CO, for Defendant.

## ORDER

ELIZABETH E. BROWN, Bankruptcy Judge.

THIS MATTER comes before the Court on the Plaintiffs' Motion for Summary Judgment. Plaintiffs initiated this adversary proceeding, seeking to except their state court judgment from discharge under either 11 U.S.C. §§ 523(a)(2), (a)(6) or (a)(7). In the Motion, they seek summary judgment on all claims. For the reasons set forth below, the Court grants Plaintiffs' Motion on the § 523(a)(7) claim, holding their judgment nondischargeable.

## I. Background

Ms. Jensen formed Credit Corrections, LLC ("Credit Corrections") in 1999 or 2000. According to Ms. Jensen, through this business, she provided "credit repair" services by reviewing each customer's credit report and helping to address any inaccuracies stated in it. Credit repair services are regulated by state and federal law, including the federal Credit Repair Organization Act ("CROA")[1] and the Colorado Credit Services Organization Act ("CCSOA").[2] Among other things, CCSOA requires credit repair businesses to provide customers with certain disclosures and notices. It also requires a surety bond. The Plaintiffs are charged with enforcing and enjoining violations of these laws in the State of Colorado.

Having received a complaint from one of Ms. Jensen's customers, the Plaintiffs opened an investigation of Ms. Jensen and Credit Corrections in September 2001. Ms. Jensen then hired counsel to assist with "bringing [her] within compliance of the Credit Services Organization Act." In pursuit of this goal, she also obtained a surety bond and began making all of the required customer disclosures.[3] Ms. Jensen and her counsel met with Plaintiffs on several occasions and provided them with the information they requested, such as Credit Collection's client list and the amount of fees paid by each of those clients.

Despite Ms. Jensen's attempts to comply, Plaintiffs ultimately determined that Ms. Jensen and Credit Corrections had violated several provisions of the CROA and CCSOA. In June 2002, Plaintiffs sent her a letter, offering to settle if Ms. Jensen signed an Assurance of Discontinuance ("AOD"), admitting to past violations and agreeing to desist from future violations and to pay a $10,000 fine. Ms. Jensen signed the AOD. In this adversary, Ms. Jensen claims that she did so under duress because Plaintiffs had threatened to send her to jail for her violations if she did not agree to this settlement. Plaintiffs dispute these allegations. After signing the AOD, Plaintiffs claim that Ms. Jensen violated its terms by continuing in the credit repair business and by failing to pay the $10,000 fine. Ms. Jensen admits she continued to provide credit repair services and that she failed to pay the fine, but she insists that her post-AOD services complied with all of the relevant statutes.

---

1. 15 U.S.C. §§ 1679–1679(j).

2. Colo.Rev.Stat. §§ 12–14.5–101–113 (2002). All references to the CCSOA shall refer to such act as it existed in 2002.

3. Affidavit of Mary Joann Jensen, ¶ 4. Ms. Jensen admits she failed to properly file the surety bond with the Colorado Secretary of State. *Id.* ¶ 5.

On June 12, 2003, Plaintiffs filed a complaint against Ms. Jensen and Credit Collections in Denver District Court (the "State Complaint"), alleging seven claims for violations of the CROA, CCOSA and the Colorado Consumer Protection Act ("CCPA")[4]. When she did not timely answer the State Complaint, Plaintiffs moved for the entry of default, which the state court granted. Shortly after, Ms. Jensen filed a late answer. Plaintiffs moved to strike the answer as untimely. Ms. Jensen did not respond to the motion to strike and the court granted Plaintiff's motion. Plaintiffs then requested a default judgment and on December 17, 2003, the state court entered judgment on all seven of Plaintiffs' claims (the "State Court Judgment").

The monetary amount awarded in the State Court Judgment is comprised of several categories of damages, some of which were awarded under more than one claim. In their brief, Plaintiffs clarify that the total amount awarded of $900,581 is comprised of:

- **$228,836** representing the amount customers paid Credit Corrections for credit repair services;
- **$457,672** in double damages for wilful violations of the CCSOA;
- **$100,000** penalty for violation of Colo. Rev.Stat. § 6–1–150(1)(u);
- **$100,000** penalty for violation of Colo. Rev.Stat. § 6–1–150(1)(z);
- **$10,000** fine for violation of the AOD;
- **$4,073** in attorneys fees and costs.

In this adversary proceeding, Plaintiffs assert that each of these categories of damages is nondischargeable under §§ 523(a)(2), (a)(6) and/or (a)(7).

4. Colo.Rev.Stat. §§ 6–1–101–115 (2002). All references to the CCPA shall refer to such act

## II. Standards for Determining Summary Judgment Motions

Federal Rule of Civil Procedure 56(c), made applicable to this case by Fed. R. Bankr.P. 7056, provides in relevant part that: "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Plaintiffs bear the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See Mitchell v. City of Moore, Oklahoma,* 218 F.3d 1190, 1197 (10th Cir.2000). If Plaintiffs carry their initial burden, Ms. Jensen, as nonmovant, must then come forward with specific facts showing that there is a genuine issue for trial. *Spaulding v. United Transp. Union,* 279 F.3d 901, 904 (10th Cir.2002). To accomplish this, Ms. Jensen must identify facts by reference to affidavits, deposition transcripts, or specific exhibits. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 671 (10th Cir.1998). Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Schwartz v. Brotherhood of Maint. of Way Employees,* 264 F.3d 1181, 1183 (10th Cir.2001). Disputes as to immaterial facts will not preclude summary judgment. *Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1361 (10th Cir.1993).

## III. Discussion

as it existed in 2002.

Section 523(a)(7) [5] provides that a discharge granted in bankruptcy does not apply to any debt "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss...." Courts have parsed this statute into three discrete elements: (1) there must be a debt for a fine, penalty, or forfeiture; (2) that debt must be payable to and for the benefit of a governmental unit; and (3) that debt cannot constitute compensation for actual pecuniary loss. *See In re Warfel,* 268 B.R. 205, 209 (9th Cir. BAP 2001). The "fine, penalty or forfeiture" may be either criminal or civil in nature. *E.g., United States v. WRW Corp.,* 986 F.2d 138, 145 (6th Cir.1993). The Supreme Court has also recognized that restitution may constitute a "fine, penalty or forfeiture" for purposes of § 523(a)(7) in certain circumstances. *Kelly v. Robinson,* 479 U.S. 36, 53, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986). Whether a particular obligation meets the elements of § 523(a)(7) is a question of law. *See Kentucky Natural Res. & Envtl. Prot. Cabinet v. Seals,* 161 B.R. 615, 618 (W.D.Va.1993); *In re Richmond,* 351 B.R. 6, 10 (Bankr. D.N.H.2006), *aff'd,* 378 B.R. 22 (D.N.H. 2007), *aff'd,* 2008 WL 4277313 (1st Cir. 2008).

The Defendant has asserted two types of defenses to this claim. First, she has denied that several of the awards made in the State Court Judgment satisfy either the first or third element of a § 523(a)(7) claim (the **"Elements Defense"**). In particular, she has asserted several awards are not in the nature of a "fine, penalty, or forfeiture." She asserts that some awards represent compensation in contravention of the third element. In raising the Elements Defense, however, she has not asserted genuine issues of disputed facts, but has instead argued for a contrary interpretation of the legal requirements of a § 523(a)(7) claim as applied to the facts.

Second, she has asserted a defense that she did not actually violate the laws of CROA, CCOSA or CCPA (the **"No Violation Defense"**). She admitted to violations when she signed the AOD, but she claims that she did so only under duress. Thus, she asks this Court to look behind the State Court Judgment and hear the issue of whether she in fact violated the statutes pertaining to credit repair services. While the Court acknowledges that there are disputed facts related to her No Violation Defense, for the reasons set forth below, these facts, and her No Violation Defense, are not material to a determination under § 523(a)(7). Alternatively, the Defendant is precluded from raising her No Violation Defense by the doctrine of res judicata. Consequently, there are no genuine issues of *material* fact pertaining to the § 523(a)(7) claim and, therefore, it is appropriate for the Court to determine it on a summary judgment basis.

### A. The Elements of a § 523(a)(7) Claim Have Been Established.

The State Court Judgment consists of several separate monetary awards, which have different characteristics. Thus, the Court must consider each category of award separately to assess whether the elements of § 523(a)(7) are met.

### 1. Penalties assessed under Colo.Rev. Stat. § 6–1–112(1)

The State Court Judgment found in Plaintiffs' favor on the State Complaint's

---

**5.** All references to "Section" or § shall refer to Title 11, United States Code, unless otherwise expressly noted. Since the Debtor filed her bankruptcy case on July 25, 2005, all references to the Bankruptcy Code shall be to the Code as it existed in 2005 but prior to the October 17, 2005 amendments.

second and third claims for relief and awarded Plaintiffs $100,000 on each claim. The judgment does not, however, expressly label these amounts as "penalties." Nevertheless, in the second and third claims of the State Complaint, Plaintiffs alleged Ms. Jensen had violated two sections of the CCPA (Colo.Rev.Stat. §§ 6–1–105(1)(u) and 6–1–105(1)(z)), thus committing deceptive trade practices. Plaintiffs sought to impose penalties for those violations under § 6–1–112(1). That section provides that:

> Any person who violates or causes another to violate any provision of this article shall *forfeit and pay to the general fund of this state a civil penalty* of not more than two thousand dollars for each such violation. For purposes of this subsection (1), a violation of any provision shall constitute a separate violation with respect to each consumer or transaction involved; except that the maximum civil penalty shall not exceed one hundred thousand dollars for any related series of violations.

Colo.Rev.Stat. § 6–1–112(1) (2002) (emphasis added). Thus, each $100,000 award is a "civil penalty," payable to the State of Colorado, assessed on a per-violation basis for each of Ms. Jensen's violations of the CCPA. The Court concludes these amounts are nondischargeable under § 523(a)(7).

▇▇▇ First, the $200,000 awarded in damages is a "penalty" as that term is used in § 523(a)(7). In making this assessment, the Court must look not only at the label given to the obligation by the parties, but also at the underlying nature of the obligation. *See In re Hickman*, 260 F.3d 400, 405–06 (5th Cir.2001). Only those debts that are penal in nature or, in other words, are imposed because of some misconduct or wrongdoing by the debtor, are nondischargeable. *See id.* at 405; *United States HUD v. Cost Control Mktg. & Sales Mgmt. of Virginia, Inc.*, 64 F.3d 920, 928 (4th Cir.1995). Debts which are primarily contractual in nature do not fall within the definition. *E.g., In re Hickman*, 260 F.3d at 406 (finding bail bond forfeiture debt to be essentially contractual and thus dischargeable); 4 Collier on Bankruptcy ¶ 523.13[3]. The debt should be a "penal sanction rooted in the traditional responsibility of the state to protect its citizens." *In re Hickman*, 260 F.3d at 406 (quoting *Kelly v. Robinson*, 479 U.S. 36, 52, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986)).[6]

▇▇▇ Although the issue of whether a debt is a "fine, penalty or forfeiture" under § 523(a)(7) is a question of federal law, bankruptcy courts look to state law to determine whether the debt at issue possesses these attributes. *In re Hickman*, 260 F.3d at 405. In this case, Colo.Rev. Stat. § 6–1–112 specifically labels the debt a "civil penalty." Colorado courts have interpreted the CCPA as a whole to have both remedial and penal purposes. *See Showpiece Homes Corp. v. Assurance Co.*, 38 P.3d 47, 50–51 (Colo.2001). But the Colorado Supreme Court has determined that the CCPA's penalty provision "is intended to punish and deter the wrong-

---

6. For other cases holding civil penalties to be penal in nature, see *United States v. WRW Corp.*, 986 F.2d 138, 145 (6th Cir.1993) (finding civil penalties served remedial purpose of promoting mine safety and were nondischargeable); *In re Tapper*, 123 B.R. 594 (Bankr.N.D.Ill.1991) (civil penalties for violation of Illinois Consumer Fraud and Deceptive Business Practices Act held nondischargeable); *Kentucky Natural Res. & Envtl. Prot. Cabinet v. Seals*, 161 B.R. 615, 620–21 (W.D.Va.1993) (civil penalties assessed for violations of surface mining reclamation law nondischargeable) (listing § 523(a)(7) civil penalty cases).

doer." *May Dept. Stores Co. v. State ex rel. Woodard,* 863 P.2d 967, 972 (Colo. 1993). The penal nature is also reflected in the structure of Colo.Rev.Stat. § 6–1–112 insofar as the statute calculates the amount of the penalty based on the number of deceptive trade practices committed by the violator. Given these attributes, the Court concludes the $200,000 awarded to Plaintiffs on their second and third claims in the State Complaint are "penalties" within the meaning of § 523(a)(7).

The $200,000 award also meets the second and third elements of § 523(a)(7). Under Colo.Rev.Stat. § 6–1–112(1), the penalties are payable to the general fund of the State of Colorado, a governmental unit. The amount of the penalty is not based on any pecuniary loss suffered by the State of Colorado but rather by the number of violations committed by the wrongdoer. Accordingly, the $100,000 award for violation of Colo. Rev. Stat § 6–1–105(1)(u) and the $100,000 award for violation of Colo. Rev. Stat § 6–1–105(1)(z) are nondischargeable debts under § 523(a)(7).

### 2. Fine for violation of the AOD.

■ The State Court Judgment also awarded Plaintiffs $10,000 on Plaintiffs' seventh claim for relief, in which they had alleged Ms. Jensen had violated the AOD. In the AOD itself, it provided that Ms. Jensen "shall remit a fine of $10,000, payable to the Administrator, Uniform Consumer Credit Code." AOD, ¶ 9(b). The AOD specifies it is made pursuant to the CCSOA and CROA. The Plaintiffs do not point to, nor does the Court find any section of the CCSOA or CROA that specifically provides for the imposition of fines. Nevertheless, both the CCSOA and the CROA give the State the power to regulate credit services organizations, to investigate violations of the CROA and CCSOA, and to maintain actions to enjoin violations. *See* Colo.Rev.Stat. §§ 12–14.5–110, 12–14.5–110.5; 15 U.S.C. § 1679h(c). The State also has the power to require a credit service organization to file a statement under oath concerning its business practices. Colo.Rev.Stat. § 12–14.5–110.5(1)(a). The stated purposes of the CCSOA are "to provide prospective buyers of services of credit services organizations with the information necessary to make an intelligent decision regarding the purchase of those services and to protect the public from unfair or deceptive advertising and business practices." Colo.Rev. Stat. § 12–14.5–102(c). Similarly, the purposes of the CROA are to "ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services" and "to protect the public from unfair or deceptive advertising and business practices by credit repair organizations." 15 U.S.C. § 1679(b).

The AOD outlines Ms. Jensen's violations of the CCSOA and CROA which Plaintiffs determined during their investigation. The AOD then orders Ms Jensen to pay a fine and to cease and desist from further violations. Given this context and the stated purposes of the CCSOA and CROA, the $10,000 fine is penal in nature and constitutes a "fine" within the meaning of § 523(a)(7). Furthermore, this award is payable to the administrator of the Uniform Consumer Credit Code, a representative of a governmental unit and it does not represent compensation for any pecuniary loss suffered by the Plaintiffs. Accordingly, the $10,000 award is nondischargeable under § 523(a)(7).

### 3. Disgorgement of Customer Fees

Plaintiffs next contend that $228,836 awarded to them by the State Court Judg-

ment is "restitution" for the fees Ms. Jensen wrongfully obtained from her customers and is nondischargeable under § 523(a)(7). The state court rendered a $228,836 award under three different claims of the State Complaint: the first claim (seeking restitution under the CROA), the fourth claim (seeking injunctive relief and disgorgement under the CCPA), and the sixth claim (seeking injunctive relief and disgorgement under the CCSOA). The State Court Judgment does not label the $228,836 award as "restitution" but, in granting judgment for Plaintiffs on the fourth and sixth claims, it orders Ms. Jensen "to disgorge" $228,836 to Plaintiffs.

The dischargeability of a civil restitution obligation is not a settled issue. The Supreme Court addressed the dischargeability of *criminal* restitution obligations in *Kelly v. Robinson,* 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986). In *Kelly,* the Supreme Court held restitution orders sufficiently penal to fall within the meaning of § 523(a)(7). *Kelly,* 479 U.S. at 53, 107 S.Ct. 353. The Court rested its decision on principles of federalism and the "fundamental policy against federal interference with state criminal prosecutions" that was at the core of the Court's holding in *Younger v. Harris. Id.* at 47, 91 S.Ct. 746 (quoting *Younger v. Harris,* 401 U.S. 37, 46, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)). The Court explained that although restitution often resembles a judgment "for the benefit of" the victim, "[t]he criminal justice system is not operated primarily for the benefit of victims, but for the benefit of society as a whole." *Id.* at 52, 91 S.Ct. 746. The Court concluded:

Because criminal proceedings focus on the State's interests in rehabilitation and punishment, rather than the victim's desire for compensation, we conclude that restitution orders imposed in such proceedings operate "for the benefit of" the State. Similarly, they are not assessed "for . . . compensation" of the victim. The sentence following a criminal conviction necessarily considers the penal and rehabilitative interests of the State. Those interests are sufficient to place restitution orders within the meaning of § 523(a)(7).

*Id.* at 53, 91 S.Ct. 746. The Tenth Circuit has recently held that the Kelly Court's reasoning extends to criminal restitution obligations that are payable directly to a victim, rather than the government. *Troff v. Ellis (In re Troff),* 488 F.3d 1237, 1238 (10th Cir.2007). The Tenth Circuit interpreted Kelly as applicable to "any obligation imposed as part of a criminal sentence." *Id.* at 1240.

But neither the Supreme Court nor the Tenth Circuit has yet considered the dischargeability of a *civil* restitution obligation, such as the one at issue in this case. At least one circuit court, the Fourth Circuit, has considered the issue and determined civil restitution obligations are nondischargeable under § 523(a)(7). In *United States HUD v. Cost Control Mktg. & Sales Mgmt. of Virginia, Inc. (CCMV),* the Fourth Circuit found that a civil order requiring the disgorgement of ill-gotten profits assessed against a land developer that failed to comply with the registration and disclosure provisions of the Interstate Land Sales Full Disclosure Act, was nondischargeable under § 523(a)(7). *United States HUD v. CCMV,* 64 F.3d 920, 927–28 (4th Cir.1995). The Fourth Circuit interpreted Supreme Court precedent as giving § 523(a)(7) a "broad reading" so that it applies to "all criminal and civil penalties, even those designed to provide restitution to injured private citizens." *Id.* at 927 (citing *Kelly v. Robinson,* 479 U.S. 36, 53, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986) and *Pennsylvania Dep't of Public Welfare v. Davenport,* 495

U.S. 552, 562, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990)). The Court noted that, although HUD had stated on the record that it intended to use some of the restitution to reimburse victims, the judgment granting restitution ordered payment to HUD and imposed no obligation on HUD to disburse the money to anyone. *Id.* at 927. The Fourth Circuit concluded that "so long as the government's interest in enforcing a debt is *penal,* it makes no difference that injured persons may thereby receive compensation for pecuniary loss. In other words, the 'not compensation for actual pecuniary loss' phrase in § 523(a)(7) refers to *the government's* pecuniary loss." *Id.* at 928 (emphasis in original).

The Seventh Circuit distinguished the *CCMV* case in *In re Towers,* 162 F.3d 952 (7th Cir.1998). In *Towers,* the State of Illinois sought a determination that a civil restitution obligation imposed on the debtor under the Illinois Consumer Fraud and Deceptive Business Practices Act was nondischargeable under § 523(a)(7). The Seventh Circuit concluded that the restitution obligation at issue was dischargeable because only two of the three elements of § 523(a)(7) were met. *Id.* at 955–56. The Court determined that the first element—that the obligation be a "fine penalty or forfeiture"—was met because the State of Illinois was enforcing its consumer protection law for the benefit of all citizens. The Court also concluded that restitution obligation met the third element of § 523(a)(7), because the restitution was not compensation for the government's pecuniary loss. It acknowledged that "Governments seek restitution to promote law enforcement by deterrence as well as by compensation . . . ." The second element, however, was not met because the restitution was not "payable to and for the benefit of a governmental unit." Rather, the Seventh Circuit interpreted the state court's restitution order, which listed victims by name and amount of loss, as directing the state attorney general to use the restitution funds to reimburse the victims listed in the order. The State of Illinois would receive no financial benefit from the restitution. This fact distinguished *Towers* from the restitution order in *CCMV,* which the Seventh Circuit noted did not require HUD to disburse the restitution to victims. Because HUD retained the restitution, the Seventh Circuit concluded, the obligation met the second requirement of § 523(a)(7) in the *CCMV* case. However, because the State of Illinois had no discretion in regard to distributing the restitution award to the victims, the obligation was not "payable to a governmental unit" and was, therefore, dischargeable.

■ Applying these precedents, the Court concludes that Ms. Jensen's restitution obligation is nondischargeable under § 523(a)(7). First, it is a "fine, penalty or forfeiture" because its purpose is penal in nature. *See In re Towers,* 162 F.3d at 955; *In re Suter,* 2005 WL 2989336 at *8 (D.Md.2005), *aff'd,* 182 Fed.Appx. 236 (4th Cir.2006); *Am. Hearing Centers Inc. v. Stein (In re Stein),* 2006 WL 4722458 at *4 (Bankr.D.Md.2006) (concluding restitution award under Maryland consumer protection act was penal in nature). As discussed above, all three statutory schemes under which the restitution was awarded (the CCPA, CCSOA and CROA) have penal and deterrence goals. *See Showpiece Homes Corp. v. Assurance Co.,* 38 P.3d 47, 50–51 (Colo.2001) (CCPA); Colo.Rev.Stat. § 12–14.5–102(c) (CCSOA); 15 U.S.C. § 1679(b) (CROA). Although restitution is measured by the amount of damage caused to consumers, the State's goal in collecting it is to enforce the State's consumer protection laws and to punish violations thereof.

■ Second, the restitution is payable to a governmental unit, the Plaintiffs. The default judgment specifically orders Ms. Jensen to disgorge the $228,836 to Plaintiffs. There is no requirement in the default judgment that Plaintiffs forward the disgorged funds to Ms. Jensen's customers. It is true, as Ms. Jensen points out, that the specific damage provisions in the CROA and CCSOA measure damages in terms of "actual damages" to consumers. *See* 15 U.S.C. § 1679g; Colo.Rev.Stat. § 12–14.5–111(1). Nothing in those statutes, the CCPA, or the language employed in the judgment lead this Court to conclude that Plaintiffs are required to reimburse consumers, as was the case in *In re Towers*. *See In re Towers*, 162 F.3d at 955–56. The remedy provision of the CCPA, in particular, gives courts considerable discretion in entering orders and judgment "as may be necessary to prevent the use or employment by such person of any such deceptive trade practice or which may be necessary to completely compensate or restore to the original position of any person injured by means of any such practice or to prevent any unjust enrichment by any person through the use or employment of any deceptive trade practice." Colo.Rev.Stat. § 6–1–110(1). Here, the State Court Judgment orders disgorgement to Plaintiffs, not to consumers. Plaintiffs may ultimately use the disgorged funds to compensate Ms. Jensen's customers, but that is within their discretion.

■ Moreover, this Court agrees with the Fourth Circuit's conclusion that "so long as the government's interest in enforcing a [restitution] debt is penal, it makes no difference that injured persons may thereby receive compensation for pecuniary loss." *United States HUD v. CCMV*, 64 F.3d at 928. So even if Plaintiffs ultimately distribute some or all of the restitution to consumers, that fact does not undercut the penal nature of the obligation. As noted by the Fourth Circuit, the Supreme Court's decision in *Kelly* gave § 523(a)(7) a broad reading. *Id.* at 927. It is true that the *Kelly* decision dealt only with *criminal* restitution and the Supreme Court's reasoning in that case rested on the fundamental policy against federal interference with state *criminal* proceedings expressed in *Younger v. Harris*. The Supreme Court has also held, however, that "[t]he policies underlying *Younger* are fully applicable to *noncriminal* judicial proceedings when important state interests are involved." *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) (emphasis added). A state's interest in enforcing consumer protection laws is such an "important" state interest. As noted by the Ninth Circuit in applying *Younger* to a state court consumer protection case:

> The state is acting to protect its consumers from unfair and deceptive trade practices by prosecuting and penalizing those who violate the Consumer Protection Act. Calling the prosecution "civil" does not mean that important state policies can be frustrated by federal court interference that would not be countenanced in criminal cases.

*Williams v. Washington*, 554 F.2d 369, 370 (9th Cir.1977).[7]

■ Thus, this Court believes the same principles of comity and federalism

---

7. *See also Cedar Rapids Cellular Tel. v. Miller*, 280 F.3d 874, 879–80 (8th Cir.2002) ("The State of Iowa has an important interest in enforcing its consumer protection statutes."); *Am. Consumer Publ'g Ass'n v. Margosian*, 349

F.3d 1122, 1127 (9th Cir.2003) ("Oregon has a strong interest in protecting its consumers from fraud and in administering its consumer-fraud statutes smoothly.").

expressed in *Kelly*, counsel against this Court interfering with or taking action that would invalidate a state action enforcing consumer protection laws. As noted by the *Kelly* Court, criminal proceedings focus on a state's interests in rehabilitation and punishment, rather than the victim's desire for compensation. In contrast, consumer protection statutes have as one of their goals, restoring injured consumers. *See Western Food Plan, Inc. v. Dist. Court*, 198 Colo. 251, 598 P.2d 1038, 1041 (1979). But the CCPA "serves more than a merely restitutionary function. A *primary purpose* of the CCPA is to deter and punish deceptive trade practices." *Hall v. Walter*, 969 P.2d 224, 231 (Colo.1998) (emphasis added). Its enforcement also serves to protect the public at large, not just particular victims. *Id.* at 234. Accordingly, Plaintiffs' interests here are sufficiently focused on the State's interest in deterrence, punishment, and protection of the public at large, "rather than the victim's desire for compensation" such that the restitution obligation operates "for the benefit of the State" and thus places the restitution order within the scope of § 523(a)(7). *Kelly*, 479 U.S. at 53, 107 S.Ct. 353. The third element is also satisfied because this award does not represent compensation for any actual pecuniary loss of the State of Colorado. The restitution award is measured in terms of the harm caused to consumers. Accordingly, the $228,836 award is also nondischargeable under § 523(a)(7).

### 4. Double Damages

■ The State Court Judgment awarded Plaintiffs $686,508 on Plaintiffs' fifth claim for relief, which alleged that Ms. Jensen's violations of the CCSOA were willful. The CCSOA imposes double damages in the case of wilful violations:

In the event of a willful violation by a credit services organization of this article or of a contract subject to this article, a person who is injured thereby shall be awarded, in addition to the damages allowable under subsection (1) of this section, an additional amount equal to twice the actual damages awarded under subsection (1) of this section.

Colo.Rev.Stat. § 12–14.5–111(2)(2002).

In this case the "damages awarded under subsection (1)," are the $228,836 awarded on Plaintiffs' sixth claim for relief. There is a dearth of case law interpreting the CCSOA, a relatively new statutory scheme in Colorado. As such, it is difficult to identify the specific purpose of this double damage provision. The Colorado Supreme Court has reviewed a substantially similar provision of the CCPA, which allows for recovery of treble damages. *See* Colo.Rev.Stat. § 6–1–113(2)(a). As to that provision, the Colorado Supreme Court has determined that "the availability of treble damages ... serves the CCPA's punitive and deterrent purposes." *Hall v. Walter*, 969 P.2d 224, 232 (Colo.1998). Given the similar purposes of the CCSOA and CCPA, it is reasonable to conclude that the CCSOA's double damage provision serves similar punitive and deterrent functions.

As with the restitution award discussed above, the doubling of the $228,836 award is penal in nature, and constitutes a "fine, penalty or forfeiture" under § 523(a)(7).[8]

---

8. For other cases finding treble damage awards nondischargeable under § 523(a)(7), see *New York v. Sokol (In re Sokol)*, 170 B.R. 556, 561 (Bankr.S.D.N.Y.1994) (finding treble damage claim awarded to state for debtor's Medicaid fraud nondischargeable under § 523(a)(7)), *aff'd* 181 B.R. 27 (S.D.N.Y. 1995); *New York v. Kelly (In re Kelly)*, 155 B.R. 75, 79 (Bankr.S.D.N.Y.1993) (finding treble damage claim awarded to state for debtor's Medicare fraud nondischargeable under § 523(a)(7)).

The double damage award is payable to Plaintiffs and it is not compensation for the State's actual pecuniary loss. Accordingly, the $457,672 in double damages is nondischargeable under § 523(a)(7).

### 5. Attorneys' fees and costs

■ The final category of damages awarded by the default judgment is $4,073 in attorneys' fees and costs. The default judgment does not refer to a specific statute as authority for the award of fees and costs. The CROA, CCSOA and CCPA, however, all provide for the award of attorneys' fees and costs. *See* 15 U.S.C. § 1679g(a)(3); Colo.Rev.Stat. § 12–14.5–110(3); Colo Rev. Stat. § 6–1–113(4). The CCSOA and CCPA, in particular, provide that costs and attorneys' fees "shall be awarded" to either the attorney general or the administrator of the Uniform Consumer Credit Code if either of those parties "successfully enforces" the relevant act. *See* Colo.Rev.Stat. § 12–14.5–110(3); Colo Rev. Stat. § 6–1–113(4).

Courts are divided on the issue of whether an award of attorneys' fees and costs may be held nondischargeable under § 523(a)(7). Some courts have held that fees and costs do not fit within the confines of § 523(a)(7) because such an award constitutes compensation for the actual pecuniary loss of the government.[9] Other courts have determined that, even though an award of costs and/or fees is intended to help defray the expense of the government, it may still be held nondischargeable under § 523(a)(7), if its primary purpose is penal.[10]

■ As with the other types of awards discussed above, bankruptcy courts look to state law to determine whether an award of costs and fees fits within the confines of § 523(a)(7). This Court finds no case law addressing the attorneys' fees provisions of the CROA or CCSOA. As for the CCPA, Colorado courts have addressed a provision allowing private parties to collect attorneys' fees. *See* Colo.Rev.Stat. § 6–1–113(2)(b). As to that subsection, the Colorado Supreme Court has held that "[t]he availability of . . . attorney fees serves the CCPA's punitive and deterrent purposes." *Hall v. Walter,* 969 P.2d 224, 231 (Colo. 1998). There is no reason to believe the subsections of the CCPA and CCSOA requiring payment of fees and costs to the attorney general or administrator do not serve the same purposes. That the award of fees is mandatory where the State successfully enforces the CCPA and CCSOA, also suggests the penal nature of the provisions. Although it is a close call, this Court concludes that the award of fees and costs in this case is sufficiently penal so that it amounts to a "fine, penalty or for-

---

9. *E.g., Illinois ex rel. Burris v. Tapper (In re Tapper),* 123 B.R. 594, 605 (Bankr.N.D.Ill. 1991) (award of costs in civil consumer protection action dischargeable); *In re Schaffer,* 515 F.3d 424, 433–34 (5th Cir.2008) (award of costs in administrative proceeding dischargeable).

10. *See e.g., In re Thompson,* 16 F.3d 576 (4th Cir.1994) (finding court costs assessed against convicted criminal defendant nondischargeable); *In re Zarzynski,* 771 F.2d 304 (7th Cir.1985) (same); *United States v. WRW Corp.,* 986 F.2d 138, 145 (6th Cir.1993) (opining that civil penalties imposed for the willful viola-

tion of safety standards under a federal statute are nondischargeable even though the penalties were "rationally related to the goal of making the Government whole by roughly compensating it for prosecutorial and investigative expenses"); *In re Haberman,* 137 B.R. 292, (Bankr.E.D.Wis.1992) (costs awarded in attorney discipline proceeding nondischargeable); *In re Klein,* 39 B.R. 927, 929–30 (Bankr.E.D.Pa.1984) (costs awarded in civil consumer protection action nondischargeable); *In re Suter,* 2005 WL 2989336 at *8 (D.Md.2005) (same), *aff'd,* 182 Fed.Appx. 236 (4th Cir.2006).

feiture," even though the award is intended to help defray the expense of government.[11] Accordingly, this Court finds the award of $4,073 in attorneys' fees and costs is nondischargeable under § 523(a)(7).

## B. The No Violation Defense is not Relevant to a § 523(a)(7) Claim.

Ms. Jensen has asked the Court to look beyond these three elements and to consider her No Violation Defense. But is this defense relevant to a § 523(a)(7) claim? Many of the § 523(a) exceptions, including those in § 523(a)(2) and § 523(a)(6), which have also been asserted by Plaintiffs, focus on the *conduct of the debtor.* In contrast, dischargeability under § 523(a)(7) is tied to the *character of the debt,* not the debtor's conduct. *See FTC v. Wright (In re Wright),* 194 B.R. 715, 718 n. 5 (Bankr.D.Conn.1996). The relevant inquiry is limited to the three elements discussed in Section A above. They focus on the nature of the award rendered in the State Court Judgment. For this reason, a governmental unit that has obtained a judgment may tender to the bankruptcy court a copy of the judgment and rest its case under § 523(a)(7). The bankruptcy court then has to examine that judgment to determine whether the obligation evidenced in it is in the nature of a "fine, penalty, or forfeiture," whether the debt is payable to and for the benefit of the government, and whether it represents something other than compensation for actual pecuniary losses. Of course, the bankruptcy court is not precluded from examining the true nature of the debt rather than any label that may be attached to it in the judgment. But nothing in this line of inquiry requires or even allows the bankruptcy court to determine whether the debtor did in fact violate a law, giving rise to the imposition of a fine, penalty or forfeiture. *See also* Jeffrey Ferriell, *The Preclusive Effect of State Court Decisions in Bankruptcy,* 58 Am. Bankr.L.J. 349, 378 (1984). The validity and amount of the debt, including whether the debtor committed a violation of the law, are no longer relevant.

Section 523(a)(7) is not the only subsection that focuses on the nature of the debt, instead of a debtor's conduct. Section 523(a)(13) makes nondischargeable debts "for any payment of an order of restitution issued under title 18, United States Code." With these debts as well, the bankruptcy court does not redetermine whether a debtor is guilty of a title 18 crime and/or whether restitution should be awarded in connection with the crime. The court merely determines whether the order at issue has imposed an obligation that is in the nature of "restitution" and whether it was issued under the federal criminal code. Section 523(a)(17) renders nondischargeable debts for certain types of fees imposed on a prisoner by a court. Again, the relevant inquiry is not whether the fee should have been imposed, but whether that type of fee has actually been imposed on a prisoner.

In § 523(a)(7), Congress has not employed language that would allow the bankruptcy court to reach the propriety of a fine, penalty or forfeiture. For example, this statute does not except from discharge debts for "violation of applicable criminal or regulatory law." If it had used this language, then bankruptcy courts would

---

**11.** *See In re Thompson,* 16 F.3d at 579 (concluding obligation to pay costs was penal in nature, in part, because costs were only paid by those defendants who were convicted of the crime charged); *See United States HUD v. CCMV,* 64 F.3d 920, 928 n. 13 ("Even where a debt is intended to help defray the expense of government, it may not be dischargeable if its primary purpose is penal.").

potentially become embroiled in determining everything from parking tickets to liability for the cleanup of superfund sites. But the statute's language is not aimed at the underlying conduct. It speaks only to the imposition of a fine, penalty or forfeiture.

## C. The Doctrine of Res Judicata Prevents Consideration of the No Violation Defense.

Even if the No Violation Defense were relevant to their § 523(a)(7) claim, Plaintiffs have argued that Ms. Jensen is precluded from raising this defense by the Rooker–Feldman doctrine. This Court disagrees. Neither the Rooker–Feldman doctrine nor collateral estoppel are applicable to this action. It is the doctrine of res judicata that bars Ms. Jensen's No Violation Defense.

### 1. The Rooker–Feldman Doctrine

 The Rooker–Feldman doctrine is jurisdictional in nature. It provides that lower federal courts, such as bankruptcy courts, lack jurisdiction to engage in appellate review of state court determinations. *Bolden v. Topeka,* 441 F.3d 1129, 1139 (10th Cir.2006). Only the United States Supreme Court may do so. *Id.* It is distinct from other preclusion doctrines, such as collateral estoppel and res judicata, not only because it is jurisdictional in nature, but also because it is applicable only in very limited circumstances. As explained by the Supreme Court:

The Rooker–Feldman doctrine ... is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. Rooker–Feldman

does not otherwise override or supplant preclusion doctrine....

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005).

 The *Exxon Mobil* Court further emphasized that Rooker–Feldman does not stop a federal court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff "present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party ..., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Id.* at 293, 125 S.Ct. 1517 (quoting *GASH Assocs. v. Rosemont,* 995 F.2d 726, 728 (7th Cir.1993)). In other words, when the federal court tries a matter anew and reaches a conclusion contrary to a judgment rendered by a state court, without concerning itself with the bona fides of the prior judgment, it is not conducting appellate review. *Bolden,* 441 F.3d at 1143. It is only when the claim or defense raised seeks specifically to attack the prior state court judgment or seeks relief for injury caused by the state court judgment that the Rooker–Feldman doctrine applies.

 In this action, neither Plaintiffs nor Ms. Jensen are complaining of a legal injury caused by the State Court Judgment. Plaintiffs have instead alleged an independent claim seeking to determine dischargeability under § 523. In raising her No Violation Defense, Ms. Jensen is not asking this Court to set aside the State Court Judgment, nor is she alleging a claim of her own for injuries arising from the State Court Judgment. As a result, the Rooker–Feldman doctrine does not de-

prive the Court of jurisdiction to hear this case, including the No Violation Defense.[12]

But while the Court has jurisdiction to hear this case, it may nevertheless be precluded from hearing matters that have already been determined in another proceeding under doctrines of preclusion, such as collateral estoppel and res judicata. In fact, the Full Faith and Credit Statute, 28 U.S.C. § 1738, requires this Court to "give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Migra v. Warren City Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). In this case, because Plaintiffs obtained their judgment in a Colorado state court, the Court must apply Colorado law to determine whether to give preclusive effect to the State Court Judgment.

### 2. Collateral Estoppel

 Considering first the doctrine of collateral estoppel, the Supreme Court has held that it is applicable in dischargeability actions, where all the necessary elements of that doctrine are met. *Grogan v. Garner*, 498 U.S. 279, 285 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Under Colorado law, the required elements of collateral estoppel are: (1) the issue to be precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) the party against whom estoppel is sought was a party to or was in privity with a party in the prior proceeding; (3) there was a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to liti-

gate the issues in the prior proceeding. *See Michaelson v. Michaelson*, 884 P.2d 695, 700–01 (Colo.1994). In the bankruptcy discharge context, this means that "[i]f, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of [§ 523], then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court." *Brown v. Felsen*, 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). In other words, collateral estoppel applies in bankruptcy courts only if the state court has made "specific, subordinate, factual findings on the identical dischargeability issue in question—that is, an issue which encompasses the same prima facie elements as the bankruptcy issue—and the facts supporting the court's findings are discernible from that court's record." *In re Dennis*, 25 F.3d 274, 278 (5th Cir.1994).

 Collateral estoppel does not apply to this case. The Plaintiffs' judgment was entered by default and thus it was not "actually litigated." This Court has previously held that for a default judgment to have collateral estoppel effect on a particular issue, there must be "evidence that the parties engaged in a meaningful assessment of the facts and then the defendant made a conscious choice not to contest the entry of judgment, or that the court rendered findings based on evidence presented in some form, through affidavits, proffers, or at trial." *Ries v. Sukut (In re Sukut)*, 357 B.R. 834, 839 (Bankr.D.Colo. 2006). In this case, it appears that Ms. Jensen merely defaulted by not participat-

---

**12.** For other cases holding that Rooker Feldman does not bar a determination of nondischargeability, *see In re Sasson*, 424 F.3d 864, 871 (9th Cir.2005) ("Actions seeking a determination of nondischargeability are core bankruptcy proceedings ... and are not sub-

ject to the Rooker–Feldman doctrine."); *Jacobus v. Binns (In re Binns)*, 328 B.R. 126, 131 (8th Cir. BAP 2005) (same); *In re Andress*, 345 B.R. 358, 367 (Bankr.N.D.Okla.2006) (same).

ing in the state court proceeding. At least the Court has no evidence that she meaningfully participated or that the state court did anything more than simply enter the Plaintiffs' proposed default judgment. As a result, the doctrine of collateral estoppel is not applicable.

### 3. Res Judicata

 Finally, the Court considers the applicability of the doctrine of res judicata, which generally applies in bankruptcy proceedings. *In re Griego,* 64 F.3d 580, 584 (10th Cir.1995). In Colorado, res judicata requires a showing of: "(1) finality of the first judgment; (2) identity of [the] subject matter; (3) identity of claims for relief; and (4) identity or privity between parties to the actions." *Cruz v. Benine,* 984 P.2d 1173, 1176 (Colo.1999). When these elements are met, "res judicata forecloses all that which *might have been litigated* previously ...," while collateral estoppel precludes only those matters which were *actually* litigated. *Brown v. Felsen,* 442 U.S. at 139 n. 10, 99 S.Ct. 2205 (emphasis added).

 In the dischargeability context, however, the Supreme Court has recognized an exception to the general applicability of res judicata. In *Brown v. Felsen,* the Court held that res judicata is *not* applicable to claims and defenses which concern the dischargeability of a claim previously reduced to judgment in a state court. *Brown v. Felsen,* 442 U.S. at 138–39, 99 S.Ct. 2205. The Court emphasized that dischargeability claims are unique and involve issues distinct from those considered in ordinary state court collection proceedings. *Id.* at 134–35, 99 S.Ct. 2205. In nondischargeability proceedings, the dischargeability claim arises, not to dispute the validity of the underlying debt, but rather "to meet ... the new defense of bankruptcy which [the debtor] has inter-

posed between [the creditor] and the sum determined to be due him." *Id.* at 133, 99 S.Ct. 2205. Thus, a bankruptcy court is not bound by the state court judgment or record when considering the *dischargeability* of the debt under federal bankruptcy principles. *In re Dennis,* 25 F.3d 274, 278 (5th Cir.1994).

On the other hand, res judicata may prevent the bankruptcy court from reexamining matters other than the dischargeability aspect, such as the validity and the amount of the debt. *See In re Griego,* 64 F.3d at 584; *In re Comer,* 723 F.2d 737, 740 (9th Cir.1984). Ms. Jensen's No Violation Defense is intended to redetermine the issue of whether the awards were proper. By alleging that she did not violate the law, and signed an admission of violation only under duress, she is asking this Court to redetermine the validity and amount of the debt itself. She had an opportunity to litigate this issue in the state court, but did not do so. She is now precluded from doing so in this Court by the doctrine of res judicata.

### III. Conclusion

The Court is sympathetic to Ms. Jensen's plight in suffering a nondischargeability judgment in excess of $900,000. The doubling of the damage awards, together with the imposition of both fines · and penalties, appears excessive, especially in light of the fact that there has been no showing of any harm to any consumer. Surely, the imposition of one $100,000 penalty would have been sufficient to deter future misconduct. But the choice to impose the maximum amount that the law allows is within the discretion of the Plaintiffs, not the Court. This Court's sole province is to determine whether the three elements of a § 523(a)(7) claim have been established. This determination does not require a trial of any disputed facts, but

only a legal determination as to the nature of the obligations set forth in the State Court Judgment. As a result, summary judgment is proper on the § 523(a)(7) claim. Given the disposition of this claim, it is unnecessary to reach Plaintiffs' remaining claims. Accordingly, it is hereby

ORDERED that Plaintiffs' Motion for Summary Judgment is GRANTED. A judgment of nondischargeability in favor of Plaintiffs and against Defendant, under 11 U.S.C. § 523(a)(7), shall enter in the amount of $900,581.